■ In the Matter of NICHOLAS D. DEMISAY, as Operator of Clove Lakes Nursing Home, Petitioner, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents. (Proceeding No. 1.) In the Matter of NICHOLAS D. DEMISAY, as Administrator of Clove Lakes Nursing Home, Petitioner, v JANE M. LYONS, as Chairperson of the New York Board of Nursing Home Administrators, et al., Respondents. (Proceeding No. 2.)—Weiss, J. Proceedings pursuant to CPLR article 78 (transferred to this court by orders of the Supreme Court, entered in Albany County) to review two determinations of respondents which, *inter alia,* found petitioner guilty of unethical conduct.

Succinctly stated, the facts in proceeding No. 1 emanate from charges lodged against petitioner as the operator of Clove Lakes Nursing Home, a 326-bed nursing home and 250-bed health related facility (hereinafter the facility), by the Department of Health (hereinafter DOH) and the Office of Health Systems Management (hereinafter OHSM) alleging multiple violations of the Public Health Law and related regulations. Proceeding No. 2 relates to charges filed against petitioner as administrator of the facility brought by DOH and the New York Board of Examiners of Nursing Home Administrators (hereinafter Board of Examiners) charging him with unethical conduct relating to deficiencies at the facility.

In December 1984 and January 1985, DOH conducted its periodic review and annual survey of the facility and, on March 29, 1985, issued a statement of deficiencies charging numerous violations based mainly upon unsanitary conditions and inadequate patient care and supervision. Petitioner submitted a plan of correction on April 8, 1985 acceptable to DOH, with six deficiencies excepted, listing May 1, 1985 as the date for implementation of most of the corrective measures. Interim inspections were thereafter conducted by DOH surveyors between April 18, 1985 and August 1, 1985, none of which resulted in statements of deficiencies. On July 19, 1985, the United States Department of Health and Human Services conducted a Federal survey of the facility at petitioner's request and found no deficiencies. By letter dated September 26, 1985, DOH notified petitioner that the facility was in full compliance with "Federal Conditions of Participation" but that it remained liable under Public Health Law § 12 for violation of the State Hospital Code.

Petitioner received a notice dated August 13, 1987 pursuant to Public Health Law § 12-a, which stated that an administrative hearing would be held on charges of violations of Public Health Law article 28 and related regulations committed during the operation of the facility as set forth in a statement of charges annexed thereto. A similar notice of hearing was served on petitioner on October 13, 1987 advising that he was being charged as the administrator of the facility with unethical conduct in violation of Public Health Law article 28-D and related regulations together with a statement of charges annexed thereto.

Following joint administrative hearings at which DOH personnel, employees of the facility, several physicians and petitioner testified, an Administrative Law Judge (hereinafter ALJ) issued a report dated October 27, 1989 sustaining 16 of the charges and recommending that petitioner be fined $12,250 as operator of the facility and $2,500 as administrator of the facility. In January 1990, the ALJ issued an addendum addressing the adequacy of the hearing notice and explained that the $2,500 fine represented 20% of the operator's fine. Respondent Commissioner of Health issued an order on April 2, 1990 adopting the report of the ALJ. The Board of Examiners thereafter issued its order sustaining the charges of unethical conduct but reduced the fine against petitioner as administrator to $1,000. Petitioner then commenced these two separate CPLR article 78 proceedings which were transferred to this court and consolidated.

Petitioner initially contends that the notice given was inadequate because it failed to include the opportunity to correct continuing violations within 30 days as provided for in Public Health Law § 2803 (7), which is a prerequisite to the assessment of per-day fines for continuing violations. Petitioner has misinterpreted the nature of the charges. Inasmuch as continuing violations were not charged, the provision for the opportunity to correct same within 30 days did not pertain to the subject charges. Rather, specific individual charges of violations were made pursuant to Public Health Law § 12, as referred to in Public Health Law § 2803 (7), which provides that "[t]he provisions of this subdivision shall not be applicable to nor limit any power to assess penalties pursuant to section twelve of this chapter".[1] We therefore find that peti-

---

1. This provision was added to Public Health Law § 2803 (7) by Laws of 1980 (ch 333), effective June 19, 1980, several years after this court's decision in *Matter of Fox Mem. Hosp. Socy. v Whalen* (55 AD2d 495, *lv denied* 42 NY2d 808), upon which petitioner heavily relies.

tioner was given proper notice of the hearing required pursuant to Public Health Law § 12-a (3) and § 2897-a (2).

Petitioner next contends that the determinations finding him guilty of certain of the charges were not supported by substantial evidence. We cannot agree. Petitioner was charged with violating various provisions of 10 NYCRR former parts 414, 415 and 416 (now found at 10 NYCRR part 415), including failure to (1) provide nursing care in conformity with facility policies, (2) properly record medications in patient records, (3) develop and implement isolation procedures, (4) properly disinfect or sterilize medical equipment, and (5) promptly evaluate patients following an emergency or significant change in their condition. The record shows that the survey was conducted by a team of five DOH employees who gave testimony describing the unclean environment existing at the facility, as evidenced by the presence of foul odors, dirty wheelchairs, dirty bedpans and urinals, dirty toilets, dried spills, unsterilized medical equipment and adult diapers on the floor. They testified to their observations of 25 specific patients and found poor personal grooming and physical conditions including dirty clothing, greasy hair, dirty nails, and stains from food and urine present. In addition, a public health physician employed by DOH testified to inadequate patient records and of the failure of doctors to promptly evaluate patients following emergencies or significant changes in their condition on at least nine specific occasions. In response, petitioner offered testimony from eight employees of the facility, including five from the nursing staff, an orderly, the housekeeping supervisor and a special technician. The testimony of these witnesses sought to explain the specific deficiencies alleged in the charges and to offer mitigating circumstances. Petitioner also produced four physicians who offered testimony to negate that given by the DOH physician.

The conflicts in the testimony merely raised issues of credibility to be resolved by the trier of the facts *(see, Prevost v New York State Dept. of Social Servs.,* 161 AD2d 934, 935). The ALJ was free to credit the testimony of the DOH witnesses over that of petitioner's witnesses. The ALJ was not bound to accept petitioner's contention that the occurrences were only isolated events beyond the control of the facility or the operator. Our examination of the record reveals sufficient relevant proof on each finding of guilt which a reasonable mind would accept as adequate to support the Commissioner's conclusions *(see, Matter of Trudo v LeFevre,* 122 AD2d 319, 321). The charges on which petitioner was found guilty as

operator of the facility are sufficient to support the determination by the Board of Examiners, which held petitioner guilty of unethical conduct in his individual capacity as the facility's administrator (see, Public Health Law § 2897 [1] [f]; *Matter of Harrow v Axelrod,* 145 AD2d 262).

We do, however, find merit in petitioner's contention that the fine against him as operator was incorrectly calculated. The statement of charges provided that each lettered subparagraph would constitute a separate violation. Inasmuch as Public Health Law former § 12 (1) provides a limitation of a $1,000 fine for each violation,[2] the fines relating to charge No. 1 (e) ($6,250), which included 23 "Examples" of violations, and charge No. 6 ($1,250), which listed five patients as "Examples", must each be reduced to $1,000 (see, Public Health Law § 12 [1]). One fine is limited to each subparagraph, not to each "Example". Additionally, there was a conceded error of $250 on the total fine imposed when the Commissioner erroneously transposed the recommendation of the ALJ of $12,250 as $12,500. The ALJ's addendum was the apparent origin of the error. Accordingly, the fine of $12,500 against petitioner as operator must be reduced to $6,750. We find no error in the $1,000 fine imposed against petitioner as administrator. The initial proposal of $2,500 by the ALJ represented 20% of the operator's fine, which the Board of Examiners thereafter reduced to $1,000. We disagree with petitioner's contention that the amount must be further broken down. There is sufficient basis for judicial review of the propriety of the fine found in the record (compare, *Matter of Eden Park Health Servs. v Whalen,* 73 AD2d 993).

Casey, J. P., Levine, Mercure and Harvey, JJ., concur. Adjudged that the determination in proceeding No. 1 is modified, without costs, by reducing the fine from $12,500 to $6,750, and, as so modified, confirmed. Adjudged that the determination in proceeding No. 2 is confirmed, without costs, and petition dismissed.

---

2. That statute was amended in 1990 (L 1990, ch 190, § 268) and now provides a maximum penalty of $2,000.