■ In the Matter of MARC LOWENBERG et al., Petitioners, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent. (Proceeding No. 1.) In the Matter of MARTA SPERANZA-LAVIANO, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent. (Proceeding No. 2.) [594 NYS2d 874] —Mahoney, J. Proceedings pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law § 6510 [5]) to review three determinations of respondent which, in proceeding No. 1, censured, reprimanded and fined petitioners for professional misconduct in practicing dentistry and, in proceeding No. 2, censured and reprimanded petitioner for professional misconduct in practicing as a dental hygienist.

The sole issue in these jointly heard professional discipline proceedings is whether substantial evidence supports respondent's determinations that petitioners, Marc Lowenberg, a licensed dentist (hereinafter Lowenberg), Marc Lowenberg D.D.S. P.C. (hereinafter the Lowenberg corporation) and Marta Speranza-Laviano, a licensed dental hygienist (hereinafter Speranza), engaged in certain specified acts of professional misconduct. A review of the record reveals that upon receiving a complaint from a dental hygienist formerly employed by the Lowenberg corporation that Lowenberg was unlawfully permitting dental hygienists to administer nitrous oxide to patients during teeth cleaning procedures (only licensed dentists are permitted to administer nitrous oxide), the Department of Education's Office of Professional Discipline (hereinafter OPD) commenced an investigation.

In connection with this investigation, an OPD undercover investigator made a June 1989 appointment with Lowenberg to have her teeth cleaned. She was ushered into an operatory and greeted by Speranza. Upon being seated in the dental chair, the investigator indicated that she wished to have nitrous oxide administered in conjunction with the cleaning. What transpired from this point on was disputed at the hearing. According to a report made by the investigator shortly after the appointment had concluded and admitted into evidence at the hearing, upon making a request for nitrous oxide Speranza replied, "sure", pulled tubes and mask apparatus from a cabinet under the sink, placed the mask on the investigator and began the procedure. The investigator noted in her report that she could see the space behind her in the television screen mounted on the ceiling and that no one was there. It was further noted that Speranza did all the work

and, with the exception of a woman who came in to use the telephone, no one else came into the operatory during the procedure. Having had nitrous oxide administered to her in the past, the investigator was also able to state that the sensations she felt on this occasion were the same as those she had experienced on prior occasions when receiving nitrous oxide.

According to petitioners, Gregory Lituchy, a dentist in the employ of the Lowenberg corporation, was standing in the doorway to the operatory located directly behind the dental chair in which the investigator was seated. His presence and interest in the "new" patient were attributed to curiosity because in making the appointment, the investigator had indicated that she had been referred to Lowenberg by one of the office's celebrity patients who was actually Lituchy's patient. While attempting to ascertain why the investigator was not referred to him, Lituchy indicated that he heard her request nitrous oxide administration, and in response to Speranza's gaze nonverbally motioned to her to affix the mask. When this had been accomplished, he stealthily reached into the room, turned on the nitrous oxide supply, stood in the doorway, monitored the administration and turned off the apparatus at the conclusion of the procedure. It was petitioners' position that Lituchy acted in this surreptitious manner in an effort to comply with the investigator's earlier statement that she did not wish to see a dentist and out of hurt pride because Lituchy considered the celebrity patient to be his patient and was offended that the celebrity had referred someone to Lowenberg and not directly to him. Upon completion of the procedure, the investigator paid the bill and left. It is uncontroverted that Speranza failed to make a notation on the investigator's patient chart that she had received nitrous oxide in connection with the cleaning.

Following conclusion of the hearing, the Hearing Panel rendered its decision. Speranza was found guilty as charged of administering nitrous oxide to a patient when unauthorized by law to do so and failing to accurately record the treatment received by a patient on the patient chart. Lowenberg and the Lowenberg corporation were likewise found guilty as charged of failing to properly supervise Speranza and of permitting her to perform activities which required a license. Upon review, the Regents Review Committee recommended dismissal of that portion of the specification against Lowenberg and the Lowenberg corporation which alleged that the latter had permitted a hygienist other than Speranza to perform

activities requiring a license. Speranza was given a censure and reprimand; Lowenberg and the Lowenberg corporation were censured, reprimanded and fined $750 each. Petitioners then commenced these proceedings to review the determinations.

The gravamen of petitioners' contentions is that the investigator's report, which constituted most if not all of the evidence of Speranza's unlawful activities (an examination of the investigator at the hearing revealed that she remembered little of the specifics that transpired on the day in question), was an insufficient evidentiary basis to support the determinations. We disagree. It is well established that nontestimonial and hearsay evidence such as written reports or records may constitute substantial evidence (see, e.g., People ex rel. Vega v Smith, 66 NY2d 130; Matter of Eagle v Paterson, 57 NY2d 831; Matter of Alizadeh v Ambach, 129 AD2d 941). Here, the investigator's report contained sufficient information, if credited, to support the conclusion that Lituchy never entered the operatory and that Speranza actually administered the nitrous oxide to the investigator. The contrary testimony presented by Lituchy and Speranza and the evidence elicited on cross-examination of the investigator regarding the accuracy of her report due to her being under the effects of nitrous oxide, spoke partly to the weight the report was to be accorded and otherwise operated to create credibility questions which ultimately were resolved against petitioners. In view of the degree of implausibility attendant to petitioners' story accompanied by the investigator's testimony that her perception and recollection of the events were not impaired by the nitrous oxide and that the drug did not affect her ability to report, it cannot be said that the weight respondent accorded the report or the crediting of its contents was irrational (see, e.g., Matter of Matala v Board of Regents, 183 AD2d 953, 954). Accordingly, there is no basis for us to interfere.

We likewise reject the contentions of Lowenberg and the Lowenberg corporation that the evidence is insufficient to support respondent's conclusion of their failure to supervise Speranza. Notwithstanding their claim to the contrary, actual knowledge of a subordinate's illegal conduct is not a prerequisite to a finding of misconduct based upon a failure to supervise (see, Matter of Demisay v Axelrod, 177 AD2d 876, lv denied 79 NY2d 755; Matter of Amber Rock Pharmacy v Axelrod, 111 AD2d 848; Matter of Cohen v New York State Bd. of Pharmacy, 27 AD2d 633, lv denied 19 NY2d 578). Moreover, there is adequate support in the record that Lowenberg's

conduct was such that it could reasonably be said that he permitted Speranza to perform acts requiring a license within the meaning of Education Law § 6509 (7).

Yesawich Jr., J. P., Crew III and Harvey, JJ., concur. Adjudged that the determinations are confirmed, without costs, and petitions dismissed.