In the Matter of WALTER SHERMAN, Petitioner, *v.* BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.

Third Department, January 12, 1966.

*Goldstein, Judd & Gurfein* (*Orrin G. Judd* and *Charles Kellert* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General* (*Robert W. Bush* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, J. P. This proceeding, pursuant to article 78 of the CPLR, is brought to review and annul a determination of the Board of Regents which censured and reprimanded the petitioner upon a finding of guilt of fraud and deceit in the practice of medicine within the purview of paragraph (a) of subdivision 2 of section 6514 of the Education Law.

The first specification of the charges, designated Third (a) in the petition, stated: "In or about or between the 1st day of August, 1958 and the 30th day of September, 1962 the respondent and/or his employees or associates under his direction, did prescribe or cause to be prescribed and did deliver or cause to be delivered certain medication in the nature of pills to various persons without any physical examination or without proper or adequate physical examination, to determine whether the condition of each of the said persons was such that the said medication could be taken without injury or harm to the said persons or without aggravation of any pre-existing physical condition; and that the said persons relying on the holding out by the respondent and/or his employees and associates under his direction, that they were physicians and skilled and competent in the practice of such profession, were led to the belief that such medication was proper and safe and would not cause any injury or harm to them or aggravate any existing condition or pre-existing condition that they might have; whereas in truth and in fact, the examination conducted by the respondent and/or his employees and associates was insufficient to determine whether there was a condition or pre-disposition to a condition of any of the said persons to harm or injury from the said medication and in some instances, no examination was conducted."

The petitioner has been a doctor for 27 years and is a member of the staff of two reputable Long Island hospitals.

Following a number of years as a general practitioner, he directed his attention to the study of obesity which eventually resulted in his practice being confined to the treatment of this particular condition. He testified, without dispute, that since he began specializing he had been consulted by over 48,000 people; that he had never been sued for malpractice nor had any consequential complaints been lodged against him by patients or other doctors with reference to his prescribed treatment.

Five of the witnesses who testified at the hearing were special investigators for the Education Department and the testimony, in some instances, was indefinite, based upon recollections of investigations made three years earlier. In sum, it showed that they had visited different offices of the doctor on one or more occasions; that their blood pressure had been taken by a doctor or some other office personnel and they were questioned concerning their prior health; that thereafter they had been given a lecture as to their diet and the use of the pills and instructed that if there were any reaction, to call the doctor's office and that, in any event, to return within a period of one or two weeks. Some of the investigators stated that they were suffering from a cardiac condition and in another instance, asthma, but the method of treatment was not altered.

A patient of the doctor testified that one of the attendants had taken her blood pressure; that she was asked if she had any illnesses or diseases, to which she replied that she had a thyroid condition. She thereafter attended a lecture as to the diet and the taking of the medication.

The last witness was the complainant, Dr. Elmer A. Kleefield. He stated that a patient, whose name he refused to reveal — whose husband was a pharmacist — came to him complaining of aches and pains, fatigue, nervousness, insomnia, itching, increased thirst and frequent urination. The doctor stated that as a result of his examination, the details of which are not in the record, he made a diagnosis that the patient was suffering from "diabetes mellitus, mild overweight, and possible addiction to possibly amphetamine and barbiturates". He stated with reference to some of the symptoms that "I would describe possibly some relation to the amphetamine and phenobarbital". The doctor testified that the patient informed him that she was advised by Dr. Sherman's staff to "eat what you want" but the witness stated "It's very possible that those are not the instructions which he gave her". The statement by the patient was in contradiction of the other witnesses who testified that they had attended a lecture concerned with diet. It is apparent

that this patient did not follow instructions given her and what she did or did not do during the interim between her last visit to the petitioner and her visit to Dr. Kleefield is a matter of speculation. How many times the patient saw Dr. Kleefield is not shown in the record, but apparently only on one occasion. He was asked a general hypothetical question with reference to the composition of pills and the type of examination and as to whether or not this would be sufficient and he stated "No, it is not sufficient". The doctor testified he resented the fact that Dr. Sherman had not answered his letter of inquiry and that when he did receive a reply, it was disappointing. The probative value of the testimony of this witness, when considered in its entirety, is minimal.

Dr. Sherman testified in detail concerning his study and research as to obesity, the compounding of medications for the purpose of aiding in weight reduction which, in his opinion, would not interfere with any prior condition from which a patient might be suffering, the necessity of explaining by way of lectures to patients the relationship between the recommended diet and the medication and the instruction to call him if there were any reaction from the pills but in any event to report to his office on a designated date for further treatment. He readily advised the members of the committee as to the contents of the medication and outlined the directives which he had given to the members of his staff and testified that if there were any violations of these directives, it was without his knowledge or consent.

He was subject to repeated examination by the members of the Grievance Committee and answered forthrightly.

The Subcommittee found him guilty of fraud and deceit as outlined in the specification.

The board stated:

"In our opinion, a patient consulting the respondent, consults him on the basis that he is a physician and holds himself out to be such and that the patient relies entirely on the professional skill of the respondent and thereby assumes that all proper medical precautions will be taken by the respondent and all proper medical examinations will be made and that all medication received will be safe and all supervisions thereafter will be adequate. As stated above, we find that the respondent's present procedures fail satisfactorily to meet these tests.

"We unanimously conclude and find respondent guilty of that portion of the charge of fraud and deceit to the extent stated above as contained in Paragraph Third, Subdivision 1(a) of the charges herein."

From an examination of the decisional law, it appears that charges of fraud and deceit in the practice of medicine have been sustained in four general categories:

(1) Narcotics. (See *Matter of Tompkins* v. *Board of Regents,* 299 N. Y. 469.)

(2) Fraudulent or excessive statements for services rendered. (See *Matter of Wassermann* v. *Board of Regents,* 11 N Y 2d 173.)

(3) Aiding or abetting an unlicensed person to practice. (See *Matter of O'Neill* v. *Board of Regents,* 272 App. Div. 1086.)

(4) Concealment of material facts. (See *Matter of Hutschnecker* v. *Board of Regents,* 269 App. Div. 891; *Matter of Gilbert* [*Cole*], 266 App. Div. 894.)

That the courts have intentionally limited the scope of such charges is demonstrated where fraud and deceit were not sustained. (See *Matter of Stammer* v. *Board of Regents,* 262 App. Div. 372, affd. 287 N. Y. 359; *Matter of Cowles* v. *Board of Regents,* 266 App. Div. 629, affd. 292 N. Y. 650.)

On this appeal the issue is whether the manner and method of the doctor's practice were such as to constitute a basis for fraud or deceit or whether it constituted the proper exercise of his professional judgment.

There is no charge, intimation or proof that Dr. Sherman was a charlatan or a quack or that he did anything illegal or immoral. In his judgment, his method of examination and prescription for obesity were proper, based upon his experience, observation, study and research, and more particularly the accomplished results. The Grievance Committee found his procedures not satisfactory and concluded therefrom that he was guilty of fraud and deceit.

It would be possible to find such a difference of opinion in any branch of medicine.

An internist from his examination diagnosed diabetes mellitus and prescribed therefor, the result being that the patient's condition worsened. An examination by another internist produced an entirely different diagnosis, the result of his examination and prescription being helpful to the condition.

A general practitioner advised his patient to start putting weight on his fractured leg, which direction was premature and caused the development of osteomyelitis. An orthopedic surgeon from his examination determined that the doctor's judgment was wrong and that an X ray would have revealed that the fracture had not sufficiently mended.

A doctor, following an examination, diagnosed indigestion and prescribed therefor, as the result of which the patient's condition

worsened. A subsequent examination by a cardiologist revealed a serious heart condition and with proper medication the condition was considerably improved.

It is commonplace in the courts to find testimony by a physician that trauma causes or aggravates carcinoma and to the contrary that trauma is not the cause of carcinoma or aggravative of such condition.

These, and many other instances which could be cited, are mistakes in medical judgment and prescription and to affirm here would be, in our opinion, a matter of grave concern to the general practitioner, and particularly the specialist, and might tend to seriously limit medical research.

Through the medium of the press, considerable publicity is being directed to experiments with " memory pills ", apparently premised on a statement in 1884 by a brain chemist who said " Behind every twisted mind is a twisted molecule ". According to the article, until the chemical " RNA " was discovered, there were no means to improve memory defects. The said medication, when administered, has a side effect of inducing abdominal pains and nausea.

In a recent newspaper article a leading medical scientist in the study of leukemia referred to a slogan which stated: " Reasoned heresy versus unreasoned orthodoxy — the scientific challenge." To the doctor it meant that in research, you really go where the road leads you and it is impossible to draw the route in advance.

It may be readily conceded that these examples are not necessarily pertinent to the present facts, but they do make clear the point that in medicine there are honest and positive differences of opinion as to the method of examination and the type of prescription in the care and treatment of a patient, which is precisely the issue before this court. If the advancement of medicine is to continue, the avenues of differences must be left open, and, under circumstances such as here, not be the basis of a charge of fraud and deceit.

We would further note that the statement in the findings to the effect that an examination by the members of the committee of the boxes of medication in evidence with the daily dosages stated on the same *makes it extremely doubtful* that the phenobarbital was present in sufficient amounts to offset the effects of the amphetamine, standing alone, is neither binding nor controlling on the courts and is not of such evidentiary value as to be substantial. Dr. Kleefield was asked the following: " Q. Assuming a person had received in one day, 45 mgs of amphetamine sulfate, 3 grains of the desiccated whole thyroid, and a sixth of a grain and a quarter of a grain of phenobarbital,

in one day, of a period of a couple of weeks. Would you say that would be sufficient phenobarbital to offset the amount of amphetamine sulfate and the other drugs? A. I can't say because this is a variable thing with each individual patient. Nobody can give a specific answer to that.''

Paragraph (a) of subdivision 2 of section 6514 [fraud and deceit] does not expressly consider the meaning of the terms but it may be characterized as intentional misrepresentation or concealment of fact. The statute shall not be construed to require that anyone actually be misled so long as the intent is present. (See *Matter of Tompkins* v. *Board of Regents,* 299 N. Y. 469, 476, *supra.*)

It is not fraud or deceit for one already skilled in the medical art, with the consent of the patient, to attempt new methods.

The Medical Grievance Committee has the duty to conduct hearings and weigh testimony in a quasi-judicial manner. The board's findings are general and equivocal attempts to establish a professional classification for fraud and deceit which the present record does not sustain. There is no evidence of any intentional misrepresentation or concealment of facts from the patient. Dr. Sherman's methods may not have been as orthodox as some members of the profession might desire but that is not the test for a finding of fraud and deceit.

Finally, it appears to be sufficiently demonstrated that, while only Dr. Sherman is here involved, an affirmance of the charges of fraud and deceit on the present record has the possibilities of reaching far beyond the present facts and having serious consequences upon the practice of medicine. Proper remedies and safeguards for the protection of the profession and particularly the public are already a hundredfold.

We hold in high regard the medical expertise of the Grievance Committee in its application of the facts to the law, but the courts are mandated to intervene when, as here, there is a misapplication of the law to the facts.

In view of our decision, we do not reach the procedural questions raised by the appellant.

The determination should be annulled and the charges dismissed.

REYNOLDS, TAYLOR, AULISI and HAMM, JJ., concur.

Determination annulled and charges dismissed, without costs.