■ In the Matter of CLAUDE AMARNICK, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, et al., Respondents.—Yesawich, Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which revoked petitioner's license to practice medicine in New York.

In 1987, the State Board for Professional Medical Conduct (hereinafter State Board) charged petitioner, a licensed osteopath since 1977, with 40 specifications of professional misconduct involving 16 patients. Petitioner was accused of practicing his profession both fraudulently and negligently, ordering excessive or unwarranted tests, and failing to maintain accurate records.

A hearing on the charges was held by a Hearing Committee designated by the State Board. The Hearing Committee unanimously concluded that petitioner was not a credible witness and found that he (1) had conducted tests which were neither requested by the referring physician nor medically necessary, (2) did not complete comprehensive physical examinations, (3) neglected to forward testing results to the referring doctor, and (4) filed no-fault insurance claim form reports which were at variance with the patient's medical records. Additionally, the Hearing Committee observed that petitioner's electromyographic test results for some patients were exactly alike, that petitioner's records for all but one of the 16 patients contained very similar upper and lower extremity abnormalities, that petitioner's test findings did not reflect the expected variations between patients, and that petitioner submitted bills for eight patients yet did not record the tests performed or their results. At the conclusion of the hearing, which spanned 21 months, the Hearing Committee sustained 39 of the charges and recommended that petitioner's license be revoked.

Thereafter, the Regents Review Committee (hereinafter RRC) accepted the Hearing Committee's findings of fact but modified its conclusions because the findings did not support certain of the charges. The RRC recommended that 19 of the specifications be affirmed—specifically those alleging fraud, failure to maintain adequate records and engaging in conduct evidencing moral unfitness while practicing medicine—that

those remaining specifications be dismissed and that petitioner's license be revoked. Respondent Commissioner of Education ultimately issued an implementing order, after which petitioner instituted this proceeding to annul the determination. Petitioner maintains that the statement of charges was deficient, that the findings of fact are not supported by substantial evidence and hence the charges are not sustainable, that he was denied a fair hearing and that the penalty is excessive.

Initially, we find the statement of charges (see, Public Health Law § 230 [10] [b]) specific enough, in light of all the relevant circumstances, to apprise petitioner of the misconduct with which he was charged to enable him to adequately defend himself (see, Matter of Block v Ambach, 73 NY2d 323, 333); accordingly, the statement sufficiently met the fair notice mandates of the statute. Contrary to petitioner's suggestion, the statute contains no requirement that each element of the misconduct charge be identified.

There is merit, however, to petitioner's argument that the factual findings adopted by respondents do not support the determination that petitioner practiced his profession fraudulently, as charged in specifications 3, 4 and 5 (Education Law § 6509 [2]). The fraud contemplated by the statute requires "a knowing, intentional or deliberate act" (Matter of Brestin v Commissioner of Educ. of State of N. Y., 116 AD2d 357, 359). Taken together, the four factual findings, which underlie respondents' conclusion that petitioner practiced his profession fraudulently, establish only that petitioner failed to record test results in some instances, while in others he recorded results which were either identical or very similar to those of other patients, and thus did not reflect expected patient variations. In light of the absence of any finding that petitioner acted intentionally or knowingly, the Commissioner's determination as to these three specifications must be annulled (see, supra, at 360). And inasmuch as specification 40, which ascribes moral unfitness to petitioner, is premised upon a finding that petitioner practiced fraud based on these very same events, it too must be annulled.

Respondents also relied upon these four factual findings to sustain specifications 24 through 38, which accuse petitioner of unprofessional conduct because of his failure to maintain records that accurately reflected the patients' evaluation and treatment (see, 8 NYCRR 29.2 [a] [3]). Inasmuch as scienter need not be shown to establish this charge (compare, 8

NYCRR 29.1 [b] [6], *with* 8 NYCRR 29.2 [a] [3]), this portion of the determination should stand.

Petitioner's assertions that inadmissible evidence tainted the administrative proceedings and that he did not receive a fair hearing before an unbiased panel are unpersuasive. Even accepting petitioner's contention that improper evidence reached the Hearing Committee, petitioner has made no showing of any demonstrable ensuing prejudice and a review of the record discloses that he was not denied a fair hearing *(see, Matter of Damino v Board of Regents,* 124 AD2d 271, 272, *lv denied* 70 NY2d 613). Furthermore, Public Health Law § 230 (6) does not, as petitioner complains, require the Hearing Committee to have a physician on the panel who specializes in the charged physician's area of expertise *(see, Matter of Rosenberg v Board of Regents,* 96 AD2d 651, 652, *lv denied* 61 NY2d 608).

During the hearing, petitioner sought to have subpoenas issued to the State's medical expert, to the hospital at which the expert worked and to the State's investigator. The Hearing Officer refused to issue the subpoenas because they were aimed at collateral issues and would "piecemeal" or prolong the already extensive hearing. Petitioner also maintains that he was denied a fair hearing because his requests were rejected. While it may have been more judicious to have accommodated petitioner, the fact is that the right to have subpoenas issued is not an unqualified one *(see, Matter of Irwin v Board of Regents,* 27 NY2d 292, 297). Here, petitioner argued that he was foreclosed from presenting evidence which would have directly attacked the credibility of the State's expert. But petitioner had already been afforded ample opportunity to challenge the credibility of the State's witness during cross-examination. Given that the Hearing Committee reviewed the patients' records, that petitioner maintained separate handwritten "scratch notes" suggesting that the patients' records admittedly needed to be supplemented, and that petitioner's own witness acknowledged that he would not keep records the way petitioner did, it can hardly be said that denial of the subpoenas harmed petitioner in any appreciable way.

In conclusion, the annulment of specifications 3, 4, 5 and 40 makes a remittal for the purposes of assessing the appropriate penalty necessary.

Determination modified, without costs, by annulling so much thereof as found petitioner guilty of specifications 3, 4, 5 and 40; matter remitted to respondents for further proceed-

ings not inconsistent with this court's decision; and, as so modified, confirmed. Casey, J. P., Mikoll, Yesawich, Jr., Mercure and Crew III, JJ., concur.