■ In the Matter of MICHAEL F. MORRISSEY, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent.—Mercure, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent which revoked petitioner's license to practice medicine in New York.

Petitioner, a physician licensed to practice in this State, was charged by the State Board for Professional Medical Conduct (hereinafter BPMC) with two specifications of gross negligence and, based on the same facts, one specification of negligence on more than one occasion, two specifications of gross incompetence and one specification of incompetence on more than one occasion, in relation to his care of two different patients (hereinafter referred to as patients A and B).

The evidence adduced at a hearing conducted by a Hearing Committee of the BPMC reveals that petitioner performed breast augmentation surgery on patient A, a 34-year-old female, on July 17, 1987 in his office in the Town of Southampton, Suffolk County. The surgery was performed under local anesthesia, with patient A receiving a combination of demerol, versed and xylocaine. Shortly after the xylocaine was administered, patient A stopped breathing and suffered cardiac arrest. Patient A was transported to Southampton Hospital, where she died on July 29, 1987. Petitioner performed breast augmentation surgery on patient B, a 21-year-old female, in his office in the City of Yonkers, Westchester County, under general anesthesia on May 9, 1988. The anesthesia was administered by Michael Sherwood, a certified registered nurse anesthetist (hereinafter CRNA) provided to petitioner by Mobile Anesthesia Equipment Services, Inc. (hereinafter Mobile Anesthesia). Patient B suffered a laryngospasm during surgery and Sherwood could not adequately ventilate her. Patient B then suffered cardiac arrest, was resuscitated by Sherwood and petitioner but thereafter suffered a second cardiac arrest at approximately 9:00 A.M. Patient B was transferred to Physicians Hospital in Queens at approximately 3:00 P.M. and was thereafter transferred to Montefiore Hospital, where she died on May 12, 1988.

Following the hearing, the Regents Review Committee ultimately accepted the Hearing Committee's findings of fact and concluded, with respect to patient A, that petitioner was negligent in failing to perform adequate preoperative tests,

incompetent in administering an excessive dose of versed,* and grossly incompetent in administering an excessive dose of xylocaine. Regarding patient B, the Review Committee concluded that petitioner was (1) negligent in failing to perform an adequate preoperative laboratory evaluation, (2) grossly negligent in failing to determine whether Sherwood was a physician or a CRNA, (3) grossly negligent in failing to ensure that the patient was intubated before surgery, (4) grossly negligent in failing to require Sherwood to use a pulse oximeter, (5) negligent in failing to ensure that Sherwood used sufficiently potent inhalation agents, and (6) grossly negligent in failing to have the patient immediately transferred to a hospital. The Review Committee accepted the Commissioner of Health's recommendation that petitioner's license to practice medicine be revoked on each of the specifications upon which a finding of guilt was made. The Board of Regents accepted the report of the Review Committee, and respondent issued an order carrying out the Board's determination. Petitioner then commenced this proceeding to challenge respondent's determination.

Initially, we reject petitioner's contention that there is insufficient evidence in the record to support respondent's determination with respect to patient A. As we have often stated, our review is limited to whether respondent's determination of petitioner's guilt by a preponderance of the evidence is fully supported by substantial evidence in the record *(Matter of Edelman v Sobol,* 174 AD2d 896, 897, *appeal dismissed* 78 NY2d 1006; *Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931; *Matter of Prokopiw v Commissioner of Educ.,* 149 AD2d 874, 875, *appeal dismissed* 75 NY2d 809). In our view, the testimony of BPMC's medical experts provides the requisite substantial evidence here. Armand Simone, a board-certified general and plastic surgeon, testified that the failure to order and review blood tests and similar evaluations deviated from generally accepted medical standards. Further, both Simone and David Hammer, a board-certified anesthesiologist, testified that the dose of xylocaine administered here was excessive and both agreed that the facial twitching, clonic movements and bradycardia experienced by patient A were classic symptoms of xylocaine toxicity. Petitioner's claim, that

---

* Although the Hearing Committee found that the administration of an excessive dose of versed constituted incompetence, the underlying specification of practicing with incompetence on more than one occasion was not sustained because the Hearing Committee concluded that the administration of the versed and xylocaine constituted only one occasion.

although he had prepared 500 milligrams of xylocaine for the procedure, he injected the patient with only 350 milligrams, raised a credibility question which was resolved against him *(see, Matter of Rojas v Sobol,* 167 AD2d 707, 709, *lv denied* 77 NY2d 806; *Matter of Goomar v Ambach,* 136 AD2d 774, 777, *appeal dismissed* 72 NY2d 908, *lv denied* 73 NY2d 701).

Turning to patient B, Simone's testimony again provides substantial evidence supporting the charge that petitioner negligently failed to perform adequate preoperative tests and lab evaluations. We conclude that substantial evidence also supports the determination that petitioner was grossly negligent in failing to inquire as to Sherwood's credentials and in failing to immediately transfer patient B to a hospital when she went into cardiac arrest. First, although petitioner contends that he had no obligation to inquire as to Sherwood's credentials, both Hammer and Simone provided testimony to the contrary. The record demonstrates that this was the first time petitioner had used Mobile Anesthesia and its president, Mikhail Zalmanov, testified that petitioner did not specifically request a physician. Petitioner concedes that a CRNA cannot administer anesthesia except under the supervision of a physician and, had he known that Sherwood was a CRNA, he would have been ultimately responsible for Sherwood's conduct and the anesthesia given patient B. It was the Board of Regents' duty to determine what constituted gross negligence *(see, Matter of Ross v Commissioner of Educ. of State of N. Y.,* 167 AD2d 569, 570), and we cannot say, in these circumstances, that the Board acted irrationally in finding that petitioner's conduct was egregious *(see, supra; see also, Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322; *Matter of Gandianco v Sobol,* 171 AD2d 965, 967; *Matter of Spero v Board of Regents,* 158 AD2d 763, 764).

Next, while petitioner contends that the delay in transferring patient B was due to his inability to find her a bed in a tertiary care facility, both Hammer and Simone testified that a standard hospital emergency room could have provided initial treatment for patient B and that petitioner's failure to transfer her for 5½ hours constituted a deviation from generally accepted medical practices. Moreover, Zalmanov testified that when he arrived at petitioner's office in response to a request for assistance, petitioner essentially delegated patient B's care and treatment to him, stating, "This is an anesthesia problem, you handle it." Respondent's determination of gross negligence in this regard is, accordingly, supported by substantial evidence *(see, Matter of Gandianco v Sobol, supra;*

*Matter of Ross v Commissioner of Educ. of State of N. Y., supra).*

There is merit, however, to petitioner's argument that there is insufficient evidence to support the determination that petitioner was (1) grossly negligent based on Sherwood's failure to intubate patient B, (2) negligent based on Sherwood's failure to use sufficient inhalation agents to place patient B under anesthesia, and (3) grossly negligent in failing to require Sherwood to use a pulse oximeter. In our view, the record contains no factual medical support for respondent's determination in this regard. Neither of BPMC's expert witnesses testified that petitioner deviated from generally accepted medical practices. Further, on this record, we cannot say that petitioner's conduct was so obviously negligent that no expert testimony was required *(cf., Matter of Morfesis v Sobol,* 172 AD2d 897, 898, *lv denied* 78 NY2d 856; *Matter of Ross v Commissioner of Educ. of State of N. Y., supra).* Accordingly, respondent's determination with respect to these particular charges should be annulled.

Petitioner's contention that erroneous evidentiary rulings tainted the administrative proceedings has been examined and found to be unpersuasive. First, it was not an abuse of discretion to reject petitioner's attempt to supplement the record with a protocol from St. Joseph's Hospital regarding the necessity of preoperative tests *(see, Matter of Columbia Gas v Public Serv. Commn.,* 118 AD2d 305, 308-309). The document was not newly discovered evidence because the protocol could have been obtained earlier with due diligence *(see, Matter of Gagliardi v Department of Motor Vehicles,* 144 AD2d 882, 883, *lv denied* 74 NY2d 606) and was irrelevant, in any event, inasmuch as its effective date was more than two years after the operation at issue. Further, petitioner has failed to demonstrate that the use of certain deposition transcripts on cross-examination " 'infect[ed] the entire proceeding with unfairness' " *(Matter of Morfesis v Sobol, supra,* at 897, quoting *Matter of Ackerman v Ambach,* 142 AD2d 842, 845, *affd* 73 NY2d 323).

Finally, the annulment of certain portions of the second and third specifications notwithstanding, it is our view that the penalty imposed should be left undisturbed. As earlier noted, petitioner's license was revoked on *each* of the specifications of which he was found guilty and we cannot say, with regard to the findings of guilt that remain, that "the penalty is so incommensurate with the offense as to shock one's sense of fairness" *(Matter of D'Amico v Commissioner of Educ. of State*

*of N. Y.,* 167 AD2d 769, 771; *see, Matter of Reisner v Board of Regents,* 142 AD2d 22, 30-31). The record demonstrates serious deficiencies in petitioner's medical judgment and petitioner's proven misconduct amply supports the penalty imposed *(see, Matter of D'Amico v Commissioner of Educ. of State of N. Y., supra; Matter of Olesh v Ambach,* 134 AD2d 736, 738, *lv denied* 71 NY2d 804; *cf., Matter of Amarnick v Sobol,* 173 AD2d 914, 915).

Mahoney, P. J., Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as sustained the finding of guilt of the part of the second specification which was based upon the allegations contained in paragraphs B.3 and B.4 and the finding of guilt of the part of the third specification which was based upon the allegation contained in paragraph B.5, and, as so modified, confirmed.