(December 12, 1991)

■ In the Matter of JOEL M. BERGER, Petitioner, v BOARD OF REGENTS OF THE STATE OF NEW YORK et al., Respondents.— Mikoll, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510 [5]) to review a determination of respondent Commissioner of Education which revoked petitioner's license to practice dentistry in New York.

Petitioner, a practicing dentist, was charged by the Office of Professional Discipline (hereinafter OPD) in December 1986 with nine specifications of misconduct: (1) practicing the pro-

fession fraudulently, (2) practicing beyond the authorized scope of dentistry, (3) practicing with gross negligence, (4) gross incompetence, (5) negligence on more than one occasion, (6) incompetence on more than one occasion, (7) excessive tests, unwarranted treatment, (8) undue influence and exploitation, and (9) practicing beyond the scope of the profession. The charges were based on petitioner's treatment of patient A over a period of several months and arose from the removal of patient A's amalgam fillings.

Hearings were held before a Hearing Panel on six days between July 24, 1987 and June 3, 1988 at which OPD presented two witnesses; Lewis Antine, an OPD investigator, and Robert Baratz, a dentist, physician and doctor of philosophy. Petitioner testified on his own behalf and offered the testimony of his expert witness, Murray Vimy. The testimony of the expert witnesses was at times conflicting on the issue of the propriety of petitioner's treatment. Patient A did not testify. However, Antine testified concerning his interview of patient A and stated that patient A told him that she had been suffering from various ailments for years. She first heard about petitioner on television. Patient A visited petitioner, who, after listening to her complaints, used a "Jerome Mercury Vapor Analyzer" to test for mercury vapor in her mouth. Petitioner also performed a saliva acidity test and measured the electrical current in patient A's mouth. Petitioner apparently told patient A that mercury in small amounts could be toxic. Over a period of time petitioner removed all her amalgam fillings and replaced them with nonmercury based fillings.

Shortly after the filling work was completed, patient A developed a burning sensation in her mouth. Petitioner then reportedly advised her to drink a detoxifying agent to cleanse her system of the remaining mercury. The sensation continued and patient A went to see an allergist and eventually had all the fillings that had been replaced by petitioner removed and refilled by another dentist.

Following the hearings, the Hearing Panel issued a report recommending that petitioner be found guilty of all the charges and that his license to practice be revoked. After reviewing the record, the Regents Review Committee heard oral arguments on behalf of petitioner and OPD and then recommended that the findings and conclusions of the Hearing Panel be accepted. The Regents Review Committee also recommended as a penalty that petitioner's license be suspended for

two years on each specification, with the suspensions to run concurrently.

Respondent Board of Regents accepted the findings and conclusions as recommended by the Hearing Panel and the Regents Review Committee, but increased the penalty to a revocation of petitioner's license to practice dentistry as to each guilty specification. Respondent Commissioner of Education issued an order reflecting the Board of Regents' determination and this proceeding followed.

The primary issue to be resolved is whether the determination of petitioner's guilt of each specification by a preponderance of the evidence is supported by substantial evidence in the record (see, Matter of Edelman v Sobol, 174 AD2d 896, 897, appeal dismissed 78 NY2d 1006; Matter of Carrera v Sobol, 163 AD2d 706, 708, affd 77 NY2d 931). In our view specification Nos. (1), (2), (3), (4), (5), (6), (7) and (9) are supported by substantial evidence while specification No. (8) is not.

Initially, we note that the issue does not, as petitioner contends, turn on whether petitioner's views on the toxicity of amalgam fillings are correct. Rather, the issue is whether petitioner's treatment of patient A's medical problems by removing her amalgam fillings without further investigation and medical evidence that the procedure was warranted constituted the acts of misconduct of which petitioner was found guilty. We note that petitioner's claim that respondents improperly relied on a new medical intervention charge, i.e., petitioner should have gained prior medical clearance for removal of patient A's dental fillings by reason of her medical condition, to sustain the charges, because petitioner was not tried on the medical intervention charge nor given notice of it, is without foundation. The failure to obtain prior medical approval before removal of the amalgam fillings was not a new charge of misconduct. It was merely the factual basis behind the charges including that of practicing beyond the profession discussed during the hearing. Each of the expert witnesses addressed the need for the participation of a physician in the diagnosis and treatment of mercury-related problems. Contrary to petitioner's assertions, he had adequate notice of the medical intervention issue during the hearing.

Next, we find that there was substantial evidence to support specification No. (1), the fraudulent practice of dentistry. Petitioner correctly argues that proof of "the intentional misrepresentation or concealment of a known fact" is required

to sustain this charge *(Matter of Brestin v Commissioner of Educ. of State of N. Y.,* 116 AD2d 357, 359; *see, Matter of Choudhry v Sobol,* 170 AD2d 893, 894). However, that intent or knowledge may be inferred from the surrounding circumstances *(see, Matter of Sung Ho Kim v Board of Regents,* 172 AD2d 880, 881-882, *lv denied* 78 NY2d 856; *Matter of Klein v Sobol,* 167 AD2d 625, 628, *lv denied* 77 NY2d 809). Facts from which such intent can be inferred were proven. Petitioner based his treatment on a test which the expert witness for OPD testified provided meaningless results, advised patient A of those results which he should have known were unreliable, represented to her that she "might" or "could" feel better after the removal of her fillings, and subjected patient A to a procedure which he was not qualified to determine was warranted without medical approval. Petitioner's rendering of the unwarranted treatment, which he knew or should have known was beyond the scope of the practice of dentistry under the circumstances, could properly be found to be the fraudulent practice of dentistry by the trier of fact.

There was also substantial evidence presented to sustain specification Nos. (2) and (9) alleging that petitioner practiced beyond the scope of the profession of dentistry in violation of Education Law § 6509 (2) and 8 NYCRR 29.1 (b) (9). Baratz, OPD's expert witness, testified that diagnosing mercury toxicity and/or mercury sensitivity, as petitioner did, was beyond the scope of the practice of dentistry and that it was improper for petitioner to remove patient A's fillings after only conducting mercury vapor, saliva acidity and electrical current tests. Baratz also stated that in view of patient A's numerous physical complaints, it was necessary to first consult with her physician, explore her symptoms further and, if it then was found necessary to remove her amalgam fillings, to do the procedure in a hospital. Vimy, petitioner's expert, who had been under the impression that patient A had been under the care of a physician at the time petitioner treated her (when in fact she was under the care of a chiropractor), implied that it would be improper to remove amalgam fillings to treat a patient's medical problems.

Likewise, substantial evidence was presented to sustain specification Nos. (3) and (4) charging petitioner with practicing the profession with gross negligence and gross incompetence. In order to support a finding of gross negligence, the conduct must be " 'egregious' " *(Matter of Spero v Board of Regents,* 158 AD2d 763, 764). The fact finder could conclude that petitioner's removal and replacement of some 14 amal-

gam fillings was not only unwarranted treatment beyond the scope of the practice of dentistry, of which petitioner was or should have been aware, but was also egregious and conspicuously bad conduct, undertaken for the purpose of self-enrichment.

In view of the above, it is clear that specification Nos. (5) and (6), charging petitioner with practicing the profession with negligence and incompetence on more than one occasion, respectively, are also sustained. The fillings were removed and replaced during separate appointments on separate days over a period of time. Petitioner additionally directed patient A to drink a detoxifying agent to cleanse her system of mercury after she complained of a burning sensation in her mouth sometime after her amalgam fillings had been removed and replaced. These could be found to be distinct acts of negligence *(see, Matter of Orozco v Sobol,* 162 AD2d 834, 836).

Based on the previously stated testimony of Baratz, the findings of guilt as to specification No. (7) (excessive tests/ unwarranted treatment) is also supported by substantial evidence. Specification No. (8), however, charging undue influence, was not supported by substantial evidence to sustain the finding of guilt. The evidence presented relating to this charge did not rise to the level of undue influence. An annulment of specification No. (8) is therefore required. However, the penalty imposed should not be changed as petitioner's license to practice was revoked as to each specification upon which he was found guilty. We also deem the penalty appropriate under the circumstances.

Weiss, J. P., Yesawich Jr., Crew III and Harvey, JJ., concur. Adjudged that the determination is modified, without costs, by annulling the finding of guilt as to specification No. (8), and, as so modified, confirmed.