■ In the Matter of MIKHAIL I. ZALMANOV, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, et al., Respondents.—Harvey, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which suspended petitioner's license to practice medicine in New York for one year.

Petitioner is a licensed physician engaged in the practice of anesthesiology. He is also the president and founder of Mobile Anesthesia Equipment Services. In May 1990, the State Board for Professional Medical Conduct initiated charges against petitioner stemming from his alleged care and treatment of patient A on May 9, 1988.[1]

On that day, Mobile Anesthesia sent certified registered nurse anesthetist Michael Sherwood to the offices of Michael Morrissey, a duly licensed plastic surgeon, to administer anes-

1. In another disciplinary proceeding against a different physician involved in this incident *(Matter of Morrissey v Sobol,* 176 AD2d 1147, *lv denied* 79 NY2d 754), patient A was designated as patient B.

thesia to patient A in connection with breast augmentation surgery. While Sherwood was administering the anesthesia, patient A suffered a laryngospasm and two cardiac arrests. Petitioner was notified of these events at approximately 9:30 A.M. and arrived at Morrissey's office one hour later. According to petitioner, Sherwood advised him during the initial phone call that Morrissey refused to transfer patient A to the nearest hospital. Upon arrival, petitioner recommended that patient A be given certain medications to stabilize her and that she be transferred to the nearest hospital, Yonkers Hospital. Morrissey refused, contending that this hospital was not equipped to treat patient A. Petitioner then called 911, but upon being informed that patient A would be transported to the emergency room at Yonkers Hospital Morrissey again refused to allow her to be transferred.

After additional discussion with Morrissey, petitioner called a few different hospitals trying to find a facility acceptable to Morrissey that could take patient A. After finding a bed for patient A at Physicians Hospital and arranging for cardiology and neurology consultations, petitioner again called 911 to arrange for patient A's transport; petitioner was advised, however, that 911 would only transport patient A to Yonkers Hospital. Petitioner called a private ambulance company at 12:35 P.M. and was told that an ambulance was on its way. Although petitioner made additional calls to the ambulance company, an ambulance did not arrive until approximately 2:15 P.M. Patient A was transported to Physicians Hospital at approximately 2:35 P.M. Patient A was thereafter transferred to Montefiore Hospital, where she died on May 12, 1988.

As a result of this occurrence, petitioner was charged with, *inter alia,* one specification of gross negligence in failing to arrange for patient A's transfer to a hospital prior to 3:30 P.M. Following an administrative hearing wherein the principal witnesses were petitioner, Sherwood and various experts, the Hearing Committee unanimously sustained the specification of gross negligence and recommended that petitioner's license to practice medicine be suspended for three months, with said suspension stayed. The Commissioner of Health recommended that the Hearing Committee's findings and conclusions be accepted in full but he recommended a one-year stayed suspension of petitioner's license. The matter was then forwarded to the Regents Review Committee which disagreed about the disposition of the sustained specification of gross negligence. Two members recommended that petitioner be found not guilty while one member dissented and voted to accept the

Hearing Committee and Commissioner of Health's findings and conclusions and recommended a one-year stayed suspension. Respondent Board of Regents accepted the recommendation of the dissenting member of the Regents Review Committee. Respondent Commissioner of Education issued an order to that effect. This proceeding followed.

In our view, the determination must be annulled. The pivotal issue at the administrative hearing was the role played by petitioner in the care and treatment of patient A prior to her arrival at the hospital. While petitioner acknowledged that he had an obligation to recommend the best possible course of treatment for patient A, he maintains that he acted only as a consultant to Morrissey and any final decision regarding her transfer to a hospital belonged to Morrissey as the primary physician. Significantly, the Board of Regents rejected this argument and concluded that petitioner "acted improperly in not himself ordering the patient to a hospital" based on the specific testimony of Office of Professional Medical Conduct expert David Hammer, which the Board of Regents found to be entirely consistent. We disagree with this assessment.

In doing so, we recognize that a determination may be supported by substantial evidence despite conflicting testimony among experts (see, Matter of Stein v Board of Regents, 169 AD2d 857, 858, lv denied 77 NY2d 810, cert denied — US —, 112 S Ct 372). In fact, as the final arbiter of credibility issues (see, Matter of Rojas v Sobol, 167 AD2d 707, 709, lv denied 77 NY2d 806), the Board of Regents was free to solely credit the testimony offered by Hammer and reject outright the opinion of petitioner's expert. Nevertheless, where, as here, the evidence relied upon is inconsistent and equivocal it cannot in our view be used to establish petitioner's guilt by a preponderance of the evidence.

At the hearing, Hammer conceded that he had no knowledge of the efforts made by petitioner to facilitate patient A's transfer to a hospital and his opinion that petitioner was grossly negligent was based solely on the medical records given to him by the Office of Professional Medical Conduct. Hammer stated that if petitioner had in fact tried to arrange an immediate transfer but was prevented from doing so by Morrissey as petitioner testified, then his opinion as to petitioner's conduct would change. Nevertheless, Hammer still maintained that petitioner was equally responsible for patient A's care. On this point, however, Hammer gave conflicting testimony as to the extent of petitioner's responsibility. Signif-

icantly, Hammer stated at one point that petitioner only had an obligation *to try* to persuade Morrissey to follow petitioner's advice and to be "persistent". At a later point in his testimony, however, Hammer stated that it was wrong for petitioner to have backed down and given in to Morrissey.

Given these inconsistencies, we cannot find that there was substantial evidence presented to establish petitioner's guilt by a preponderance of the evidence *(see, Matter of Morrissey v Sobol,* 176 AD2d 1147, *lv denied* 79 NY2d 754; *Matter of Gwise v Sobol,* 174 AD2d 785). Assuming, arguendo, that petitioner did have a physician-patient relationship with patient A, we cannot conclude from the evidence presented that petitioner's conduct so deviated from the standards set forth by Hammer so as to constitute gross negligence. The undisputed facts as found by respondents pertaining to petitioner's behavior fully comport with Hammer's statement that petitioner was required to be persistent and to do everything in his power to influence Morrissey. We note finally that petitioner's comparatively peripheral role with respect to patient A makes this matter distinguishable from cases involving physicians who took a more active role in treating patients *(see, e.g., Matter of La Pointe v Sobol,* 185 AD2d 462, 463; *Matter of Ross v Commissioner of Educ. of State of N. Y.,* 167 AD2d 569; *Matter of Spero v Board of Regents,* 158 AD2d 763, 764).[2]

In light of the foregoing resolution of this matter, it is unnecessary to address the parties' remaining contentions.

Weiss, P. J., Mikoll, Yesawich Jr. and Crew III, JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.

---

2. It should be noted that in *Matter of La Pointe v Sobol (supra),* there was a Chief of Surgery who possessed the authority to overrule the decision of the surgeon if the petitioner had reported the situation. No such authority existed in the instant case.