■ In the Matter of RICHARD ADLER, Petitioner, v BUREAU OF PROFESSIONAL MEDICAL CONDUCT, STATE OF NEW YORK, DEPARTMENT OF HEALTH, Respondent. [622 NYS2d 609] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee on Professional Conduct which revoked petitioner's license to practice medicine in New York.

On June 24, 1992, the State Board for Professional Medical Conduct filed 37 specifications of professional misconduct against petitioner, a licensed physician specializing in the treatment of allergies. The charges stemmed from petitioner's treatment of eight patients (hereinafter patients A, B, C, D, E, F, G and H) between 1982 and 1988 and false statements he made in insurance claims submitted to Metropolitan Life Insurance Company (hereinafter Met Life) and on applications he made to a hospital and the Connecticut Medical Examining Board.

Following an evidentiary hearing, the Hearing Committee on Professional Conduct sustained each of the specifications and ordered that petitioner's license be revoked and that he pay a fine of $200,000. Petitioner then commenced this proceeding. As limited by his brief, petitioner's challenge is directed to that portion of the Hearing Committee's determination that found that he had practiced medicine fraudulently and engaged in conduct evidencing his moral unfitness to practice medicine.[1] He also contends that the penalty imposed upon him is excessive.

In assessing petitioner's challenge, the scope of our review is limited to ascertaining whether the Hearing Committee's determinations are supported by substantial evidence *(see, Matter of Rudell v Commissioner of Health of State of N. Y.,* 194 AD2d 48, 50, *lv denied* 83 NY2d 754). We further note that we are bound by the Hearing Committee's rejection of

---

1. Left unchallenged is the Hearing Committee's determination that petitioner was guilty of practicing medicine negligently on more than one occasion, practicing medicine incompetently on more than one occasion, filing false reports, ordering excessive tests and treatments, and failing to maintain adequate records.

petitioner's exculpatory explanations for his conduct inasmuch as issues of credibility of witnesses and the weight afforded to the evidence are matters exclusively within the province of the Hearing Committee *(see, Matter of Sung Ho Kim v Board of Regents, 172 AD2d 880, 881, lv denied 78 NY2d 856; Matter of Klein v Sobol, 167 AD2d 625, 627-628, lv denied 77 NY2d 809).*

The findings underpinning the Hearing Committee's determination that petitioner practiced medicine fraudulently with respect to patients A through H are that he ordered tests and procedures that were not medically indicated, billed patients A, B, D, E and F for laryngoscopies that were not performed, placed patients A and C through H on weekly programs of immunotherapy that were not medically indicated, and billed patients F, G and H for office visits when he did not see or examine them. The Hearing Committee further found that, between January 1983 and January 1987, petitioner routinely submitted claims to Met Life for payment which contained false information and deliberately misrepresented his actual charges for medical services, resulting in the overpayment to petitioner of approximately $250,000.[2]

Lastly, the Hearing Committee found that when petitioner applied to the Connecticut Medical Examining Board for a medical license and to Danbury Hospital for appointment to its staff, he falsely stated that he had received an undergraduate degree from Princeton University.

Petitioner maintains that these determinations cannot be sustained due to the Hearing Committee's failure to set forth specific findings of intentional misrepresentation or concealment of facts. As petitioner contends, an administrative body must set forth an adequate statement of the factual basis for its conclusions *(see, Matter of Montauk Improvement v Proccacino, 41 NY2d 913, 914).* Thus, in *Matter of Brestin v Commissioner of Educ. of State of N. Y.* (116 AD2d 357), where we held that the fraud contemplated by the Education Law requires an intentional misrepresentation or concealment of a known fact, we annulled a determination that the petitioner made or filed false reports since there was "an absence of anything in the determination to suggest that it was * * * based upon a finding of intentional or knowing misrepresentations" *(supra,* at 360). Likewise, in *Matter of Amarnick v Sobol*

---

2. Petitioner repaid this sum to Met Life in settlement of an action Met Life brought against him under the Federal Racketeer Influenced and Corrupt Organizations Act (18 USC § 1961 *et seq.).*

(173 AD2d 914), we annulled a determination that the petitioner practiced his profession fraudulently as there was no finding that he acted intentionally or knowingly.

Conversely, we sustained a determination of fraudulent practice where it was found that the petitioner intentionally concealed his prior employment and falsely represented that he was board eligible in pediatrics since such actions permitted an inference of guilty knowledge and intent *(see, Matter of Sun Ho Kim v Board of Regents, supra,* at 881-882; *see also, Matter of Berger v Board of Regents,* 178 AD2d 748, 751, *lv denied* 80 NY2d 918, *cert denied* — US —, 113 S Ct 1815 [intent and knowledge may be inferred from surrounding circumstances]).

Here, there are no findings that petitioner made false representations to his patients or subjected them to treatments he was not qualified to perform, or otherwise acted in an intentionally or knowingly fraudulent way toward them *(compare, Matter of Berger v Board of Regents, supra).* In fact, the record shows that there is a difference of opinion in the medical community regarding the efficacy of the procedures utilized by petitioner, thereby negating an inference of fraud *(see, Matter of Sherman v Board of Regents,* 24 AD2d 315, 321, *affd* 19 NY2d 679). Thus, for these reasons, we shall sustain petitioner's challenge on this issue and annul the Hearing Committee's determination that he was guilty of specifications a, c, d, f, g, h, j, k, m, n, p, r, s, u and v of charge III (practicing medicine fraudulently).[3]

Because petitioner's practice of billing patients for laryngoscopies that were not performed and for office visits where he did not see or examine them permits an inference of guilty knowledge and intent, we find that the determinations of guilty of specifications b, i, l, o, q, t and w of charge III are supported by substantial evidence. We will, however, annul the finding of guilty of specification e of charge III, as there is no proof that petitioner ordered and billed patient B for a laryngoscopy.

Predicated upon its finding that petitioner engaged in fraudulent billing practices, the Hearing Committee sustained the specifications of charge III pertaining to his involvement with Met Life. As it can be inferred that petitioner intentionally misrepresented the facts from the fact that, between January

---

3. These specifications charged petitioner with ordering tests and procedures that were not medically indicated and placing patients on weekly programs of immunotherapy that were not medically indicated.

1983 and January 1987, he routinely submitted claims for payment to Met Life containing false information and deliberately misrepresented his actual charges for medical services, we find these determinations supported by substantial evidence.

Petitioner's knowingly false statement on his applications to the Connecticut Medical Examining Board and Danbury Hospital that he received an undergraduate degree from Princeton University permitted the Hearing Committee to draw an inference of guilty knowledge and intent *(see, Matter of Sun Ho Kim v Board of Regents, supra,* at 881-882). Thus, we find there is substantial evidence supporting the Hearing Committee's determination that such conduct constitutes the fraudulent practice of medicine.

We shall sustain petitioner's challenge to the Hearing Committee's determination that his conduct evinces his moral unfitness to practice medicine insofar as it relates to specification b of charge VII since that determination is founded upon the unsupported finding that petitioner ordered and billed patient B for a laryngoscopy that he did not perform *(see, Matter of Amarnick v Sobol, supra,* at 915).

Whether the penalty of revocation of petitioner's license should be sustained depends upon whether it is so incommensurate with the offense as to shock one's sense of fairness *(see, Matter of Santasiero v Sobol,* 199 AD2d 835, 836, *lv denied* 83 NY2d 754; *Matter of Golan v Sobol,* 195 AD2d 634, 636, *lv denied* 82 NY2d 661). We consider the penalty appropriate since it is apparent that petitioner abused the privilege afforded him by his medical license by using it chiefly as a means of personal aggrandizement rather than in the service of the people of this State.

We have considered petitioner's remaining contentions and found them unpersuasive.

Cardona, P. J., Mikoll, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of specifications a, c, d, e, f, g, h, j, k, m, n, p, r, s, u and v of charge III and specification b of charge VII; matter remitted to respondent for reconsideration of the fine in accordance with this Court's decision; and, as so modified, confirmed.