■ In the Matter of ATIF N. WAHBA, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [716 NYS2d 443] —Peters, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner, specializing in obstetrics and gynecology, was charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 15 specifications of professional misconduct stemming from his treatment of seven patients (hereinafter patients A, B, C, D, E, F, G). Following an evidentiary hearing before a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee), petitioner was found guilty of practicing with negligence on more than one occasion in his treatment of his patients A, B, C, E and F; with incompetence on more than one occasion in treating patients A, B and F and with practicing with gross negligence and gross incompetence in treating patients A and F; the specifications involving patients D and G were not sustained.

With respect to patient A whose presenting complaint was a swollen right breast with puss and blood periodically leaking from her right nipple over a one-month period, the Committee found that petitioner failed to properly evaluate and refer her to a surgeon despite negative results from a breast examination, pelvic examination and sonogram. BPMC's expert detailed that petitioner's initial failures fell below the accepted standard of care and that the error was compounded by a failure to inquire further during numerous follow-up visits. Eighteen months from the initial visit, such patient, seeking treatment with another practitioner, was diagnosed with stage IV breast cancer wherein a 12-centimeter circular mass behind the nipple of the right breast was detected. Petitioner's own expert supported the Committee's findings.

As to patient B, the Committee found that petitioner left the delivery room during the third stage of pregnancy—the delivery of the placenta—after the patient delivered a fetal death. BPMC's expert testified that this stage of delivery is the most critical stage for the welfare of the patient since postpartum hemorrhage can occur at any time. A charge of negligence pertaining to patient C was also premised upon petitioner's failure to complete the third stage of pregnancy. When patient C began to hemorrhage, it was discovered that petitioner had already left the hospital before she was stable, despite being told that the anesthesiologist assisting in the manual removal of the placenta would be unavailable to monitor her. Moreover, it was found that petitioner refused requests by a nurse supervisor to return to the hospital to review the patient's condition.

As to patient E, it was found that petitioner failed to appropriately evaluate her complaints of headaches, continuing chest pains and difficulty breathing after her delivery of a healthy child and discharge from the hospital. With patient F, who was in the third trimester of her pregnancy, petitioner was faulted for failing to properly advise her to go to the hospital after he received two telephone calls from her husband about her severe vaginal bleeding. Ultimately, patient F suffered from a severe abruption of the placenta and the birth of a child with asphyxia and neurological damage.

After issuing its findings, the Committee determined that a two-year suspension should be stayed, with supervisory probation, despite its recognition that petitioner's testimony was evasive and his manner offensive. Both parties sought relief from the Administrative Review Board for Professional Medical Conduct (hereinafter ARB). Although the ARB sustained no additional charges, it voted to revoke petitioner's license, reasoning that he was not an appropriate candidate for retraining and that the monitoring recommended by the Committee could not have wholly eliminated the risks placed upon the public by his continued licensure. This appeal ensued.

Our review is limited to a consideration of whether ARB's determination was "arbitrary and capricious, affected by an error of law or an abuse of discretion" (*Matter of Brown v New York State Dept. of Health*, 235 AD2d 957, 957-958, *lv denied* 89 NY2d 814). With matters of credibility, the weighing of expert testimony and the resolution of conflicting evidence beyond our scope (*see, Matter of Post v State of New York Dept. of Health*, 245 AD2d 985, 986; *Matter of Brown v New York State Dept. of Health, supra,* at 957), no error is discerned. Despite

conflicting testimony by petitioner, who the Committee found to be evasive and "offensive," the credibility determinations regarding the BPMC witnesses made by such Committee and later adopted by the ARB have a "rational basis supported by fact" (*id.*, at 958). Notwithstanding the ARB's differing conclusion as to the reasons underlying petitioner's actions (*see, Matter of Amato v State of New York Dept. of Health*, 229 AD2d 752, 753, *lv denied* 89 NY2d 801), no further review is warranted.

Turning to the penalty, it is within the province of the ARB to impose a more severe sanction (*see, Matter of Kabnick v Chassin*, 89 NY2d 828, 829-830). The ARB's articulated basis for the revocation is properly founded upon credibility determinations with respect to the testimony of not only BPMC's witnesses but also that of petitioner. Because the ARB found that the risks to the public were paramount, we cannot conclude that the penalty is so disproportionate to the offense so as to shock one's sense of fairness (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Chua v Chassin*, 215 AD2d 953, 956, *lv denied* 86 NY2d 708).

Crew III, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.