■ In the Matter of SALIM MANSOUR BRAICK, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH, Respondent. [786 NYS2d 599]—

Lahtinen, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Petitioner was licensed to practice medicine in New York in 1983 and concentrated his practice in obstetrics and gynecology. Based upon his treatment of 10 patients, he was charged in 2001 by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 122 specifications of misconduct. Many of the charges stemmed from petitioner's conduct when performing a surgical procedure known as hysteroscopic myomectomy, which involved removing a fibroid mass through a lighted telescopic instrument that was inserted into the uterus. The BPMC's expert testified that during the course of this procedure, it is critical to monitor the inflow and outflow of glycine distending fluid. If a deficit of one liter is reached the surgery must be terminated immediately since the excessive absorption of fluid by the patient can lead to complications including hyponatremia, pulmonary edema, cerebral edema and even death. Indeed, one of petitioner's patients absorbed 11 liters of glycine during her surgery and died. Petitioner also performed several other surgeries without adequately monitoring the inflow and outflow of glycine, resulting in various physical problems for patients who were subjected to excessive fluid absorption. There was further evidence that, among other things, petitioner repeatedly failed to use or inform patients of nonsurgical or less invasive surgical alternatives, perform proper preoperative tests, get informed consent and keep adequate records.

Following a lengthy hearing, the Hearing Committee of the State Review Board for Professional Medical Conduct sustained charges of negligence on more than one occasion, gross negligence, failure to adequately maintain patient records and performing medical services not authorized by patients. In reaching its decision, the Committee found the BPMC's expert credible, including his opinion that petitioner was ultimately responsible for what happened to his patients during the relevant surgeries, and the Committee rejected the efforts of petitioner and his expert to shift responsibility to nurses. The Committee revoked petitioner's license. Petitioner appealed to

the Administrative Review Board for Professional Medical Conduct (hereinafter ARB), which affirmed the Committee's determination and penalty. This CPLR article 78 proceeding ensued.

We turn first to petitioner's contention that the ARB's determination was affected by an error of law, which is one of the limited grounds upon which this Court can set aside a determination by the ARB (*see Matter of Wahba v New York State Dept. of Health,* 277 AD2d 634, 635 [2000]; *Matter of Harris v Novello,* 276 AD2d 848, 849 [2000]). Petitioner argues that the Committee and the ARB adopted a "captain of the ship" doctrine holding him responsible for everything that happened in the operating room even though nurses were present and should share responsibility. Initially, we note that petitioner has mischaracterized the so-called "captain of the ship" doctrine, which was used in some jurisdictions (but not New York) as a means of affording a recovery in civil cases at a time when many hospitals were protected by charitable immunity, and which has waned as a viable theory with the decline of charitable immunity for hospitals (*see generally Lewis v Physicians Ins. Co. of Wis.,* 243 Wis 2d 648, 663-664, 627 NW2d 484, 492-493 [2001]). The ARB neither applied such a doctrine nor did it adopt an absolute rule that in a professional medical conduct proceeding a surgeon is always responsible for all the acts or omissions of every other professional in the operating room. Indeed, surgical procedures vary in terms of the number and types of medical personnel present and the respective roles of those individuals (*see Matter of Morrissey v Sobol,* 176 AD2d 1147, 1149 [1991], *lv denied* 79 NY2d 754 [1992]). Thus, the extent of professional misconduct is dependent on the facts of each case (*see Matter of Kaphan v De Buono,* 268 AD2d 909, 911-912 [2000]; *Matter of Morrissey v Sobol, supra* at 1149 [1991]; *see also Matter of Catsoulis v New York State Dept. of Health,* 2 AD3d 920, 921 [2003]). Here, the ARB's determination relied upon, and was fully supported by, facts and expert opinion in the record. Its determination was thus neither affected by an error of law nor can it be characterized as arbitrary and capricious (*see Matter of Maglione v New York State Dept. of Health,* 9 AD3d 522, 524, [2004]).

Next, we consider petitioner's challenge to the penalty imposed. Our review is limited to considering whether the penalty is so disproportionate as to be shocking to one's sense of fairness (*see Matter of Mayer v Novello,* 303 AD2d 909, 910 [2003]; *Matter of Prado v Novello,* 301 AD2d 692, 694 [2003]; *Matter of Jean-Baptiste v Sobol,* 209 AD2d 823, 825 [1994]). Petitioner argues that alternative penalties, such as prohibiting

him from performing surgery, would have been more appropriate since many of the charges related to surgeries. The ARB considered and rejected such an alternative, stating that, among other things, petitioner "failed to evaluate patients properly, failed to respond properly to patient problems[,] . . . prescribed contraindicated medication [and] . . . showed disregard for patients." The ARB concluded that his "refusal to take responsibility for his errors means no chance exists for [him] to learn from his mistakes." These findings are supported by the record and, in light thereof, we are unpersuaded that the penalty should be disturbed (*see Matter of Wapnick v New York State Bd. for Professional Conduct*, 203 AD2d 728, 729 [1994]).

Peters, J.P., Mugglin, Rose and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.