In the Matter of KAJ HOLMSTRAND, Petitioner, v BOARD OF REGENTS OF UNIVERSITY OF STATE OF NEW YORK, Respondent.—Proceeding pursuant to CPLR article 78, initiated in this court pursuant to subdivision 4 of section 6510 of the Education Law, to review a determination of the Board of Regents which revoked petitioner's license to practice medicine. Kaj Holmstrand, a board certified plastic surgeon, was charged with alleged professional misconduct (Public Health Law, art 2, tit 2-A) on February 1, 1977. Specifically, he was charged with gross negligence and gross incompetence, with practicing the profession fraudulently (Education Law, § 6509, subd [2]) and unprofessional conduct (Education Law, § 6509, subd [9]). The specifications alleged, *inter alia,* that petitioner performed plastic surgery in his office in a negligent and incompetent manner so as to leave serious scars and cause disfigurement of his patient, that he failed to appear for scheduled surgery on several occasions, that he failed to render adequate postoperative care, that he bilked a medical insurer for an amount greatly in excess of his charge to the patient, and that he failed to provide necessary medical attention to his patients. The record reveals that petitioner, on May 2, 1975, performed multiple elective surgery upon a female patient in his office lasting nearly 10 hours. The procedure included a face lift, eyelid surgery and nose surgery. An expert medical witness testified that the surgery should have been performed in the hospital, that the amount of surgery was excessive for one session and that the surgery was improperly performed with poor results. On May 7, 1974 and November 27, 1974, petitioner performed two facial operations on another female patient using Z-plasties, thereby causing a straight skin scar to become larger and zigzagged. A medical expert gave as his opinion that the Z-plasty procedure should not have been used and, as a result of such use, the revised scarring was worse after the operation. Four doctors associated with hospitals at which petitioner practiced in 1974 and 1975 testified that petitioner failed to appear for scheduled operations, failed to provide postoperative care in several cases and failed to be available when his patients required attention. As a result of such conduct, he was suspended from Brooklyn-Cumberland Medical Center in 1974 and his operating privileges were removed at St. John's Hospital in 1975. On another occasion, July 14, 1974, petitioner operated on a young boy for several facial and hand injuries sustained in a pipe bomb explosion. He failed to properly attend the patient after the surgery, and, further, as established by another medical expert, improper surgical procedures resulted in more scarring than if nothing had been done. Next, the record shows that on August 1 and 7, 1975 petitioner failed

to appear for scheduled cleft palate surgery on an eight-year-old girl and when the surgery was performed later, he neglected to provide necessary postoperative care. In mitigation, Dr. Holmstrand testified that during the period in question he was experiencing severe financial and marital difficulties and should not have been practicing surgically. Further, he admitted that he made improper surgical use of Z-plasty flaps causing poor results, that he possibly injured a facial nerve branch on another patient, that he excessively billed Blue Cross and Blue Shield for services rendered to another patient, that he was unprepared for emergencies such as cardiac arrest when performing surgical procedures in his office, and that he failed to timely appear for hospital-scheduled operations. While the Hearing Committee on Professional Conduct of the State Board for Professional Medical Conduct exonerated petitioner of the charges contained in the first specification alleging gross negligence and gross incompetence and of the charges contained in the fourth specification, they determined that the second, third and fifth specifications of the charges were proved by substantial evidence and recommended that petitioner's license to practice medicine be revoked, but that such revocation be stayed and petitioner placed on probation for one year during which time he be required to complete a year of fellowship training. The State Commissioner of Health accepted the findings and recommendation. The Board of Regents, while accepting the findings, modified the penalty "based upon a much more serious view of the misconduct * * * and upon the viewpoint that the protection of the public requires the imposition of a more severe measure of discipline". Petitioner's license to practice medicine was revoked. This article 78 proceeding ensued. In matters of this kind, questions of credibility of witnesses are exclusively for the Board of Regents (Matter of D'Alois v Allen, 31 AD2d 983, app dsmd 25 NY2d 908) and a determination pursuant to section 6510 of the Education Law may be supported by substantial evidence despite conflicting testimony as to the charges (Matter of Trager v Board of Regents of Univ. of State of N. Y., 61 AD2d 871), and it is not germane that a reviewing court might have come to a different conclusion (Matter of Shephard v Ambach, 68 AD2d 984). Thus, it is clear that our review is limited to seeing that the determination before the court is supported by substantial evidence (Matter of Pell v Board of Educ., 34 NY2d 222). Given petitioner's admission that he prepared a false medical bill, an act held to be a fraudulent practice of medicine (Matter of Wassermann v Board of Regents of Univ. of State of N. Y., 11 NY2d 173) invoking license revocation, and his admission that he should not have performed certain operations in his office and, further, employed certain techniques condemned by expert witnesses, the board cannot be faulted for concluding that these practices constituted negligence and incompetence. We conclude that the board's determination is supported by substantial evidence in the record (Matter of Pell v Board of Educ., supra). Finally, we conclude that the penalty of license revocation is not "'"so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness".'" (Matter of Pell v Board of Educ., supra, p 233) and it is not arbitrary or improper because the board enlarged the penalty beyond that recommended by the hearing panel and accepted by the commissioner (Matter of Shephard v Ambach, supra; Matter of Cassell v Allen, 27 AD2d 597). Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Kane and Mikoll, JJ., concur; Main, J., not taking part.