In the Matter of MILTON REISNER et al., Petitioners, v BOARD OF REGENTS OF THE STATE OF NEW YORK, Respondent.

Third Department, November 23, 1988

## APPEARANCES OF COUNSEL

*John R. Bartels, Jr.,* for petitioners.

*Robert Abrams, Attorney-General (John J. O'Grady* of counsel), for respondent.

**OPINION OF THE COURT**

KANE, J.

In September 1981, pursuant to the provisions of Education Law § 6509, the Office of Professional Medical Conduct (hereinafter OPMC) charged petitioner Milton Reisner (hereinafter petitioner) with, *inter alia,* gross negligence and negligence on more than one occasion, based upon his approval, as a psychiatrist, of five individuals for gender reassignment surgery. The OPMC contended that petitioner's psychiatric examinations failed to meet acceptable medical standards in that his histories failed to refer to the patients' emotional and behavioral needs, failed to document the patients' emotional states and previous psychological problems, and failed to describe their personality makeup. The specifications contained in the charges include making diagnoses of transexualism without adequate evaluations of the patients and recommending gender reassignment surgery without adequate evaluations of the patients, failing to provide necessary postoperative follow-up care for the patients and, on one occasion, contributing to a patient's suicide because of inadequate evaluation.

Intermittent hearings on these charges were held before a panel of the State Board for Professional Medical Conduct (hereinafter the hearing committee) between April 21, 1982 and January 3, 1985 and, over objection, were held jointly with charges against David Wesser, the surgeon who performed the gender assignment surgery at the now defunct Yonkers Professional Hospital on the five patients who are the subject of these charges.

At the conclusion of the extensive hearings over this lengthy period, the hearing committee issued its report finding petitioner guilty of gross negligence with respect to patient A and negligence on more than one occasion with respect to patients A, B, C, D and E. The hearing committee recommended a three-year suspension, with two years stayed, and a period of probation. In its findings, the hearing committee concluded that petitioner was not responsible for the suicide of patient A, but that he was guilty of gross negligence in recommending patient A for gender reassignment in view of patient A's having previously taken an overdose of Sominex and indicating suicidal tendencies. In addition, the hearing

committee found that petitioner's testimony that he was not a primary treating physician of patients B, C, D and E was unreliable and contrary to the evidence, and that the Gender Identity Evaluation Committee which supposedly existed at Yonkers Professional Hospital, and to which petitioner contended he submitted reports and various other material, was a sham. The Commissioner of Health's recommendation that the hearing committee's findings and recommendations be adopted by respondent was modified by the Regents Review Committee to increase the stay of the three-year suspension to 2½ years. However, in October 1987, respondent voted to adopt the findings of the hearing committee and imposed a three-year suspension, the last two years to be stayed, and placed petitioner on probation for three years. It also ordered petitioner to undergo a continuing education program in the field of general psychiatry and medical ethics and directed random review of his office, patient and hospital records by the Department of Health. In December 1987, the Commissioner of Education issued an order enacting respondent's vote and this proceeding ensued. The determination should be confirmed and the petition dismissed.

■ We reject petitioner's contention that respondent exceeded its statutory authority in applying the preponderance of the evidence standard to the findings of the hearing committee, rather than applying the substantial evidence standard as was done by the hearing committee. Prior to its amendment on December 21, 1984, Public Health Law § 230 (10) (former [f]) provided, in part, that the conclusions of the hearing committee shall be based on substantial evidence. The Legislature, however, by Laws of 1984 (ch 1005, § 3) changed the evidentiary standard applicable to medical misconduct proceedings to a preponderance of the evidence. This standard was to be applied only in hearings initiated after January 20, 1985 (see, L 1984, ch 1005, § 19). Petitioner maintains that, because notice of the misconduct hearing had been served prior to this date, the substantial evidence standard should have been applied by respondent and by failing to do so it exceeded its statutory authority.

Education Law § 6510-a (2) provides: "[respondent] (a) shall consider the transcript, exhibits and other evidence, if any, the findings, conclusions and recommendation of the committee on professional misconduct and the recommendation of the commissioner of health, (b) shall decide whether the licensee is guilty or not guilty on each charge, (c) shall decide what

penalties, if any, to impose". By this statute respondent is charged "with the responsibility of ultimately passing upon a physician's guilt or innocence and the penalty to be imposed" *(Matter of Di Marsico v Ambach,* 48 NY2d 576, 581). Here, notwithstanding the fact that respondent should have applied the substantial evidence standard because petitioner was charged by the OPMC in September 1981, respondent did not exceed its authority. The fact that it applied a preponderance of the evidence standard in no way harmed petitioner. In fact, petitioner was afforded even more protection. Moreover, respondent's interpretation of the statutory provisions delineating its duties and powers should be given deference and accepted by the courts if not unreasonable or irrational *(see, supra,* at 582). Here, its actions were not unreasonable or irrational.

■ Petitioner also maintains that respondent exceeded its authority by revising factual findings of the hearing committee by finding guilt by a preponderance of the evidence. This claim is without merit. By statute, respondent is specifically charged with deciding guilt by considering the transcript, exhibits and other evidence *(see,* Education Law § 6510-a [2] [a], [b]). Accordingly, it is empowered to examine the testimony in order to determine whether the person charged is guilty, and the determination of guilt herein by a preponderance of the evidence did not require respondent to make new factual findings. Rather, it was a statement of how the evidence supported guilt. This determination was not irrational and, accordingly, it should not be disturbed by this court *(see, Matter of Di Marsico v Ambach, supra,* at 576).

■ Petitioner claims that any consideration of the substantial evidence standard is unconstitutional in that it violates the Due Process Clauses of the US and NY Constitutions. We are not persuaded.

■ Equally without merit is petitioner's claim that his equal protection rights have been violated because prospective application of the statute's amendment creates unequal treatment of two classes of persons, one class to be adjudicated by a substantial evidence standard and the other to be adjudicated according to a preponderance of the evidence standard. Petitioner was not denied equal protection under the laws and is not aggrieved since respondent found guilt by a preponderance of the evidence, affording petitioner the benefit of the higher standard of proof *(see, Matter of Cerminaro v Board of Regents,* 120 AD2d 262).

■ We also reject petitioner's argument that the findings of guilt were not supported by substantial evidence. An administrative determination to revoke a physician's license must be sustained if, upon the entire record, the finding of the physician's deficiencies is supported by substantial evidence and revocation is not otherwise shocking or arbitrary *(Matter of Villaflor v Board of Regents,* 109 AD2d 925; *see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 232).

Petitioner contends that his treatment of the five patients met the standards of care accepted by the medical profession during the period in question. Petitioner cites to the testimony of four psychiatrists who testified on his behalf. The State's experts testified that petitioner's psychiatric evaluations of patients were inadequate for the purpose of determining their suitability for gender reassignment surgery and set forth the elements of a standard psychiatric evaluation. In particular, it was noted that psychiatric evaluations of candidates for gender reassignment surgery should be intensive and should be over an extended period of time, with additional follow-up therapy after surgery, and that petitioner's psychiatric evaluations for patients for the purpose of determining their qualification for gender reassignment surgery was inadequate.

Respondent's determination was based upon its evaluation of the massive amount of testimony adduced at the hearing. It was noted that the evaluation reports of petitioner with respect to the five patients did not conform to acceptable medical standards. Petitioner's claim that this finding was not supported by the evidence because of the conflicting testimony of his expert witnesses is without merit. Essentially, this challenge raises questions of credibility, which are determined solely by respondent *(see, Matter of Cerminaro v Board of Regents,* 120 AD2d 262, 264, *supra).* This record demonstrates substantial evidence to support respondent's determination, which is not arbitrary, capricious or unreasonable.

■ Petitioner also contends that the hearing committee was biased because Dr. Naomi Goldstein, its chairperson and a psychiatrist, had known Dr. Morris Herman, who was an expert witness for the State, for 25 years. Her acquaintance with Herman was based on the fact that she was on the same faculty at New York University Medical School and on the same staff at New York University Bellevue Hospital Center. Goldstein informed the parties of this information after Herman had begun his testimony, and stated that she could listen to the case without being prejudiced or influenced by this

relationship. Upon objection by petitioner, the other members of the hearing committee met separately and discussed the situation and determined that she should remain. Petitioner's motion for a mistrial and for disqualification of Goldstein was denied. We find no error in this procedure.

"[A]n applicant is constitutionally entitled to unprejudiced decision-making by an administrative agency" *(Matter of Warder v Board of Regents,* 53 NY2d 186, 197, *cert denied* 454 US 1125; *accord, Withrow v Larkin,* 421 US 35, 46-47). A mere allegation of bias, however, is not enough to demonstrate prejudice. "There must be a factual demonstration to support the allegation of bias and proof that the outcome flowed from it" *(Warder v Board of Regents, supra,* at 197). Here, "[these] facts, standing alone, do not present a reasonable basis upon which an inference of impropriety may be predicated" *(Kletnieks v Brookhaven Mem. Assn.,* 53 AD2d 169, 177). As other cases have noted, in any type of medical proceedings, members of the same medical specialty may by necessity often be members of the same county or State-wide organizations *(supra).* Indeed, the inherent difficulty in obtaining independent medical expert witness has been recognized *(see, McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20, 27).

The fact that Goldstein and Herman knew and associated with one another professionally does not in and of itself demonstrate bias. Petitioner's contention that Goldstein would afford more weight to Herman's testimony is unavailing. First, Herman was only 1 of 2 psychiatrists who testified for the State. Dr. Lloyd Siegal, who also testified for the State, gave sufficient testimony to form a reasonable basis upon which guilt could have been predicated. It should be noted that Goldstein also stated that she was acquainted with two psychiatrists who testified for petitioner. In our view, any proof of potential bias or prejudice that may have existed is far from substantial *(see, Matter of Wesser v State of New York, Dept. of Health, State Bd. of Professional Med. Conduct,* 94 AD2d 681, 682, *affd* 60 NY2d 785). Petitioner has not demonstrated that the hearing committee was biased.

As previously stated, petitioner was charged with professional misconduct in the treating of patients A through C as the psychiatrist who evaluated these patients and recommended them for gender reassignment surgery. Petitioner's case was joined with that of David Wesser, the surgeon who performed the operations, due to the common factual issues. At the outset, petitioner contended that he was prejudiced by

the joinder because it prevented the hearing committee from giving separate and independent consideration to the evidence relevant to each proceeding, and because it caused the hearing committee to hold petitioner to the standard of care required of a primary treating physician.

"[A] general principle [is] that cases which involve identical parties and issues may be tried together in the sound discretion of the court" *(Business Council v Cooney,* 102 AD2d 1001, 1002). "The discretion [given] the courts to order a joint trial * * * to expedite justice is possessed by administrative agencies" *(Matter of Bayron v New York State Dept. of Motor Vehicles,* 28 AD2d 993, *lv denied* 21 NY2d 643). Here, the relationship between petitioner and Wesser did involve common patients. Petitioner evaluated the patients and gave his recommendation to Wesser that they were appropriate candidates for gender reassignment surgery. Thus, any investigation as to the adequacy of their treatment involved common factual issues, making joinder appropriate *(see, supra).* Separate hearings would have required duplication of much of the evidence that was submitted at this lengthy hearing; thus, consolidation preserved time and resources *(see, Matter of Massey v Ambach,* 135 AD2d 1054).

Moreover, petitioner was not prejudiced by joinder because the hearing committee gave separate and independent consideration to the evidence with respect to both petitioner and Wesser. This is evidenced by the hearing committee's findings of fact and recommendations, which give separate analysis to the evidence against both petitioner and Wesser. In addition, both petitioner and Wesser had the opportunity to present extensive testimony on their own behalf, and respondent's determination as to petitioner was supported by that evidence relevant to him, namely, the expert testimony of Herman and Siegal. The joinder was not prejudicial *(see, supra,* 135 AD2d, at 1056).

Petitioner's claim that joinder was prejudicial in that it held him to the standard of care of a primary treating physician is also not persuasive. The hearing committee determined his misconduct in light of the expert testimony which stated that his evaluations of patients A through E were inadequate.

Finally, we are not persuaded that the punishment petitioner received was excessive. A court is restricted in its ability to review the propriety of sanctions imposed in proceedings affecting a physician's license to practice medicine

*(see, Matter of Gunduy v Ambach,* 92 AD2d 956) and where, as here, substantial evidence sustains the determinations of an administrative body, the power of the courts to review the sanction imposed is strictly limited *(Kostika v Cuomo,* 41 NY2d 673). In order for a court to set aside the sanction imposed by an administrative body the punishment must be " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" ' " *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 233, *supra,* quoting *Matter of Stolz v Board of Regents,* 4 AD2d 361, 364).

Here, respondent found serious deficiencies in petitioner's actions. He approved patients for irreversible surgery without having adequately evaluated the patients. He failed to review the patients' emotional needs and made diagnoses based on insufficient information, including the failure to consult prior treating professionals, and to investigate the patients' prior medical and mental histories. In light of the delicate and sensitive nature of gender reassignment surgery, which, according to several psychiatrists, can lead to subsequent mental and emotional problems, petitioner's punishment for his misconduct is not shocking to one's sense of fairness. "[T]he penalty imposed was a proper discharge of [respondent's] duty to protect the public" *(Matter of Heins v Commissioner of Educ. of State of N. Y.,* 111 AD2d 535, 536-537, *lv denied* 65 NY2d 611) and, accordingly, the punishment is not excessive.

MAHONEY, P. J., YESAWICH, JR., HARVEY and MERCURE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.