■ In the Matter of SHELDON STEIN, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK, Respondent.—Harvey, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of the Commissioner of Education which revoked petitioner's license to practice medicine in New York.

Petitioner, a physician specializing in orthopedics, was ultimately charged with 27 specifications of professional misconduct by the Department of Health. These charges pertain to petitioner's treatment, between January 1983 and August 1986, of seven patients referred to as patients A through G. The seven patients' cases represented orthopedic care given by petitioner for fractures of the ankle (patients B, E), arm (patients C, D) and hip (patient F), and for elective surgery on the ankle and wrist (patients A, G). Following a hearing

before the Hearing Committee of the State Board for Professional Medical Conduct, it was recommended that all or part of seven of the specifications be sustained, including five specifications of gross negligence and/or gross incompetence, and one specification each of negligence and/or incompetence and inadequate recordkeeping.* The specifications of which petitioner was found guilty generally emanated from his allegedly faulty performance of a surgical procedure known as "open reduction and internal fixation", which consisted of the placement of plates and/or pins to patients' bones to repair fractures.

As a result of this misconduct, the Hearing Committee recommended that petitioner's license to practice medicine be revoked. The Commissioner of Health agreed with the conclusions and recommendations of the Hearing Committee. However, a divided Regents Review Committee, while agreeing with the findings of guilt, recommended a lesser penalty which included probation. Nonetheless, respondent voted to revoke petitioner's license, and such penalty was embodied in an order executed by the Commissioner of Education. Petitioner thereafter commenced this proceeding to review the determination.

Initially, we disagree with petitioner's contention that the subject determination is not supported by substantial evidence. Petitioner's arguments in this regard center chiefly around challenging the qualifications and objectivity of the Department of Health's expert witness, Dr. Paul Clark. Nonetheless, as pointed out by respondent, Clark's qualifications and extensive experience as a practicing orthopedist during the period when the misconduct allegedly occurred were amply stated and explored at the hearing. The fact that petitioner's expert disagreed with Clark's conclusions merely created a credibility determination for respondent to resolve as the ultimate fact finder in disciplinary cases *(see,* Education Law § 6510-a [2]; *Matter of Di Marsico v Ambach,* 48 NY2d 576, 581-582; *Matter of Reisner v Board of Regents,* 142 AD2d 22, 26-27). It is well settled that "a determination * * * may be supported by substantial evidence despite conflicting testimony as to the charges" *(Matter of Holmstrand v Board of Regents,* 71 AD2d 725, 726). Here, Clark's testimony, combined with other evidence, adequately established petitioner's guilt

---

* The Hearing Committee concluded that petitioner's treatment of patient F was appropriate and recommended that all specifications relating to this patient be dismissed.

with respect to the sustained charges. As for petitioner's allegations of bias, it is notable that throughout Clark's testimony he readily acknowledged those aspects of petitioner's work which were "good" or "excellent", thereby establishing that no irrational prejudice against petitioner existed.

Finally, petitioner vigorously contests that the punishment imposed by respondent was disproportionately harsh in light of the nature of the offenses. We cannot agree. Our reluctance to interfere with a professional licensing authority's disciplinary sanctions is well established *(see, e.g., Matter of Viloria v Sobol,* 152 AD2d 92, 96). It is only when the sanction imposed is "shocking to one's sense of fairness" or "disproportionate to the misconduct" *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 234) will we intervene to annul a penalty. Here, petitioner, noting the numerous letters of recommendation from colleagues, points out that the sustained misconduct occurred relatively early in his medical career and he has since participated in significant amounts of continuing education in the area of orthopedics. As laudable as these efforts may be after the fact, the truth remains that the patients affected by petitioner's misconduct all had to undergo subsequent surgery with its attendant pain and risks as a result of his conduct. Several patients suffered deformities, infection, necrosis and wound dehiscence while one patient, a 13-year-old girl, also sustained nerve and muscle damage. In light of this type of serious consequences to petitioner's patients as a result of his conduct, we cannot conclude that revocation of his license was a disproportionately harsh punishment *(see, e.g., Matter of Heins v Commissioner of Educ. of State of N. Y.,* 111 AD2d 535, 536, *lv denied* 65 NY2d 611; *Matter of Villaflor v Board of Regents,* 109 AD2d 925, 926).

As a final matter, we express some concern over the fact that the Department of Health waited a relatively long period of time before bringing charges against petitioner. Expeditious investigation and prosecution of malpractice charges are essential to protect the public. Nevertheless, our concerns on this point do not alter our view that the penalty in this instance was within respondent's considerable discretion.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.