■ In the Matter of F. ANDREW MORFESIS, Petitioner, v THOMAS SOBOL, as Commissioner of Education, Respondent.— Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent which, *inter alia,* suspended petitioner's license to practice medicine in New York for two years.

Petitioner, a licensed physician, was charged with practicing the profession negligently and/or incompetently on more than one occasion and with gross negligence and/or gross incompetence (Education Law § 6509 [2]) as to patients designated A through E. After a hearing before the State Board for Professional Medical Conduct, petitioner was found guilty of negligence as to patients B, C and E, and the remaining charges were dismissed. As a result, petitioner's license was suspended for two years, the suspension was stayed and petitioner was placed on two years' probation. Petitioner commenced this proceeding to challenge respondent's determination.

At his hearing petitioner sought to introduce into evidence medical literature which he claimed supported his treatment of patient B and directly contradicted the testimony of the State's expert. The Hearing Officer sustained an objection to the introduction of said material which petitioner contends violated his right to due process of law. It has long been the rule that statements in medical books, even if considered authoritative, are not admissible in evidence as proof of the facts or opinions contained therein *(e.g., Pahl v Troy City Ry. Co.,* 81 App Div 308). While it is clear that the strict rules of evidence are inapplicable to administrative hearings *(Matter of Ackerman v Ambach,* 142 AD2d 842, *affd* 73 NY2d 323), adherence to such a well-established common-law rule of evidence cannot be said to constitute a deprivation of due process. To warrant annulment, an erroneous evidentiary ruling must "infect the entire proceeding with unfairness" *(supra,* at 845). That cannot be said in the case at bar.

Petitioner contends further that the determination of negligence as to patients B, C and E is not supported by substantial evidence. With regard to patient B, negligence was found in that petitioner performed surgery prematurely and failed to conduct adequate preoperative procedures. In support of that contention, the State's expert testified that the care of patient

B deviated from accepted standards and was premature due to the patient's low blood pressure and low fluid level. He testified that good practice dictated that fluid therapy be administered for 12 to 24 hours prior to surgery. Petitioner relies on his expert who testified that, given the circumstances of this particular patient, surgery was not premature and did not constitute a deviation from accepted standards.

Patient E came to the hospital complaining of chest pain. Petitioner rejected X-ray diagnosis and endoscopy and proceeded to use a nasogastric tube to clear the patient's esophagus. He conceded that this was unorthodox. The State's expert testified that the standard practice called for petitioner to pass an endoscope into the patient's esophagus to visualize the area before attempting to clear it. Again petitioner relies on his expert who testified that appropriate care was given to patient E.

Petitioner takes the position that, given the conflicting testimony of qualified experts concerning the appropriateness of the care rendered to patients B and E, the determinations involving these patients are not based on substantial evidence. We disagree. It is well settled that when medical experts disagree a credibility issue arises for determination by the ultimate fact finder and that such determination may be found to be supported by substantial evidence despite such conflicting testimony *(Matter of Stein v Board of Regents,* 169 AD2d 857).

Petitioner also claims that negligence was not established with regard to patient C because the experts who testified refused to characterize his treatment as negligent. Patient C was treated for fluid in her left lung as demonstrated by an X ray seen by petitioner. Petitioner mistakenly proceeded to insert a needle in the patient's right lung to drain fluid. We have previously held that preparation of a leg for surgery other than the one that was to be operated upon supported a finding of gross negligence *(Ross v Commissioner of Educ. of State of N. Y.,* 167 AD2d 569). Certainly the conduct here supports a finding of ordinary negligence. The determination of negligence as to patients B, C and E is supported by substantial evidence.

Finally, petitioner contends that the determination must be annulled because his actions, even if determined to be deviations from good and accepted medical practice, did not harm patients B, C and E. In essence, petitioner contends that respondent must establish "injury" as a predicate to a finding of negligence in a medical disciplinary proceeding. We dis-

agree. While injury is an essential element in a civil action for money damages, there is no such requirement in proceedings of this sort. Education Law § 6509 was enacted to protect the welfare of the general public who deal with State-licensed practitioners and respondent is charged with the responsibility of fulfilling that mandate (see, *Matter of Di Marsico v Ambach,* 48 NY2d 576). To suggest that respondent should await injury to one or more specific members of the public, when he has knowledge that a practitioner is engaging in conduct which, if continued, will assuredly result in such injury, is untenable. That would be contrary to respondent's obligation to protect the welfare of the general public who may be unsuspectingly treating with such a practitioner.

Determination confirmed, and petition dismissed, without costs. Casey, J. P., Weiss, Mercure, Crew III and Harvey, JJ., concur.