■ In the Matter of JOSEPH S. MATALA, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents.—Yesawich Jr., J. P. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which revoked petitioner's license to practice medicine in New York.

Based on his allegedly substandard treatment of patients A, B, C and D, petitioner, a physician specializing in obstetrics and gynecology, was charged by the Department of Health with five specifications of professional misconduct, including four by reason of practicing the medical profession with gross negligence and/or gross incompetence and one by reason of practicing the medical profession with negligence and/or incompetence on more than one occasion (*see,* Education Law § 6509 [2]). Following a four-day hearing, a Hearing Committee of the State Board for Professional Medical Conduct sustained all five specifications and recommended revocation of petitioner's license to practice medicine. Although he accepted the Hearing Committee's findings of fact and conclusions, the

Commissioner of Health recommended imposition of a five-year, conditionally stayed suspension. Upon the recommendation of the Regents Review Committee, however, respondent Board of Regents agreed with the Hearing Committee's recommendation that petitioner's license be revoked upon each specification of the charges of which he was found guilty and respondent Commissioner of Education executed an order to that effect. Thereafter, petitioner commenced this CPLR article 78 proceeding pursuant to Education Law § 6510-a (4) to annul the determination. Respondents answered. Petitioner's application for a stay pending review was denied.

Initially, we note that the charges against petitioner were reasonably specific to apprise him of the charges against him *(see, Matter of Block v Ambach,* 73 NY2d 323, 333) and the Hearing Committee's findings of fact and conclusions for each specification were sufficiently detailed so as to enable intelligent challenge and proper judicial review *(see, Matter of Simpson v Wolansky,* 38 NY2d 391, 396). Moreover, the well-settled principle that the Board of Regents' determination regarding witness credibility will not be disturbed unless it is irrational is especially important in this case, which turns on the testimony of four witnesses: (1) patient A, (2) the State's expert, Fred Storm, the medical director of Upper Hudson Planned Parenthood in Albany, (3) petitioner, and (4) petitioner's expert, William Dillon, an associate professor of obstetrics and gynecology at the State University of New York at Buffalo *(see, Matter of Goomar v Ambach,* 136 AD2d 774, 777, *appeal dismissed* 72 NY2d 908, *lv denied* 73 NY2d 701; *see also, Matter of Stein v Board of Regents,* 169 AD2d 857, 858, *lv denied* 77 NY2d 810, *cert denied* — US —, 112 S Ct 372). Petitioner's assertion that the Board of Regents' adverse credibility determination was influenced by the Hearing Committee's bias against him is spurious, and no factual demonstration of bias has been proffered *(see, Matter of Warder v Board of Regents,* 53 NY2d 186, 197, *cert denied* 454 US 1125).

Examination of the record satisfies us that the determination that petitioner's guilt was established by a preponderance of the evidence is amply supported by the evidence *(see, Matter of Stone v Sobol,* 171 AD2d 235, 240; *Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931), and the conclusion that such guilt constitutes gross negligence and incompetence and negligence and incompetence on more than one occasion is reasonable *(see, Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322; *Matter of Ross v Commissioner of Educ. of State of N. Y.,* 167 AD2d 569, 570). We therefore

confirm the determination *(see, Matter of Hirose v Sobol,* 167 AD2d 570, 571).

With respect to patient A, whom the Hearing Committee found to be "entirely credible", the conclusion that petitioner failed to adequately take and/or record patient A's blood pressure during the prenatal period (allegation A.1) is fully supported by testimony at the hearing. Patient A testified that, to the best of her knowledge, her blood pressure was not taken on every visit, and both Storm and Dillon testified that standard medical practice requires that blood pressure be taken during each prenatal visit and that petitioner's records show that patient A's blood pressure was taken only five times. In addition, Dillon stated that in the absence of information on a patient's chart one assumes that a procedure has not been done, and petitioner testified that if the patient's pressure was normal "you forget" to document it. That petitioner unnecessarily and improperly performed a cervical cauterization on patient A without obtaining her informed consent and adequately documenting the indications for or performance of such procedure (allegations A.4, A.5, A.6) is similarly established by the record. Patient A gave an account of the office visit in question and testified that petitioner made no visual inspection prior to his decision to cauterize. Storm opined that patient A's account indicates that she did not give her informed consent and he further observed that the documentation of the procedure was inadequate. In addition, Dillon testified that deciding to cauterize prior to an examination would be a deviation from standard care and that patient A's medical chart did not indicate any abnormal findings upon examination or any indications for such procedure, or that patient A gave an informed consent.

As to patient B, the conclusions that petitioner failed to recognize the possibility of an ectopic pregnancy in a timely manner (allegation B.1) and to appropriately treat complications following a dilatation and curettage procedure (allegation B.2) are fully supported by the testimony of petitioner, Dillon and Storm. The record indicates that petitioner's records show that, although petitioner initially considered the possibility of an ectopic pregnancy, he later ruled this diagnosis out despite the facts available. Storm testified that when patient B's ectopic pregnancy ruptured, following treatment for a spontaneous abortion, petitioner had an ultrasound taken which was not indicated and which unduly delayed treatment of patient B's condition.

The conclusions that petitioner failed to do a second oxyto-

cin challenge test on patient C in a timely manner (allegation C.1) and to deliver patient C's pregnancy in a timely manner (allegation C.2) were borne out by Storm and Dillon's testimony that a second test was indicated at least a week sooner than the one attempted in order to assess fetal well-being, petitioner's admission that he knew the second test "should have maybe" been performed sooner than it was and that he knew the second test "didn't take", and Storm's testimony that it was a deviation from standard care to allow patient C to proceed more than four weeks beyond her estimated date of delivery as confirmed by ultrasound.

Finally, the decision that petitioner failed to investigate and diagnose patient D's gestational diabetes (allegations D.1, D.2) rests on Storm's testimony that, contrary to standard good care, petitioner did not investigate patient D's abnormally elevated sugar level during two prior hospital admissions by obtaining blood sugar levels and glucose tolerance tests and on petitioner's admission that such testing was indicated but neither noted nor carried out. Parenthetically, as petitioner has not shown that the 14-year delay in bringing charges concerning patient D has resulted in lost access to relevant witnesses or evidence, such time lapse standing alone does not warrant annulling this determination (see, Matter of Cortlandt Nursing Home v Axelrod, 66 NY2d 169, 177-178, cert denied 476 US 1115; Matter of Rojas v Sobol, 167 AD2d 707, 708, lv denied 77 NY2d 806).

In light of the pattern of substandard practice found, we are unpersuaded that revocation of petitioner's license is an excessive or disproportionate penalty (see, Matter of Pell v Board of Educ., 34 NY2d 222, 233; Matter of Stein v Board of Regents, 169 AD2d 857, 859, supra). Petitioner's remaining contentions are without merit.

Mercure, Crew III and Casey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.