■ In the Matter of RONALD A. LOFFREDO, Petitioner, v THOMAS SOBOL, as Commissioner of the New York State Education Department, et al., Respondents. (And Another Related Proceeding.) [600 NYS2d 507] —Mercure, J. Proceedings

pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law former § 6510-a [4]) to review two determinations which, *inter alia,* suspended petitioner's license to practice medicine in New York for one year.

Petitioner is a licensed physician engaged in the practice of obstetrics and gynecology. In July 1988, the State Board for Professional Medical Conduct (hereinafter BPMC) initiated charges against petitioner stemming from his care of 12 patients, designated patients A through L, who were admitted to Saratoga Hospital in the City of Saratoga Springs, Saratoga County, for labor and delivery. Petitioner was charged with a specification of gross negligence and/or gross incompetence with respect to each of the patients and, based upon the same underlying allegations, a single specification of negligence or incompetence on more than one occasion *(see,* Education Law § 6509 [2]). Many of the specifications concerned petitioner's performance of a "forceps delivery which was not medically indicated".

An administrative hearing was conducted on 23 days between August 1988 and February 1989, with the principal witnesses consisting of petitioner, nursing personnel from Saratoga Hospital and numerous experts. On September 6, 1989, the Hearing Committee issued a detailed 121-page report setting forth its findings and conclusions. The Committee sustained five specifications of gross negligence and found that petitioner was negligent or incompetent in his care and treatment of nine of the patients, thereby sustaining the charge of negligence or incompetence on more than one occasion. On July 6, 1990, the Regents Review Committee issued a report accepting the Hearing Committee's findings and conclusions and recommending concurrent one-year suspensions of petitioner's license upon each specification, at the conclusion of which petitioner's license would remain partially suspended in the areas of "gynecological surgical procedures customarily performed in a hospital and obstetric procedures related to labor and delivery" until such time as he successfully completed a program of retraining in those areas. Thereafter, respondent Board of Regents accepted this recommendation and respondent Commissioner of Education issued an appropriate order, challenged by petitioner in these CPLR article 78 proceedings.

Noting that our inquiry is limited to the question of whether the determination of petitioner's guilt by a preponderance of the evidence is fully supported by substantial evidence in the record *(see, Matter of Edelman v Sobol,* 174

AD2d 896, 897, *appeal dismissed* 78 NY2d 1006; *Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931), we shall address petitioner's challenges to the sufficiency of the evidence. Petitioner was found guilty of gross negligence in failing to promptly diagnose patient A's preeclampsia following her admission to Saratoga Hospital. Preeclampsia is a serious condition afflicting pregnant women and is characterized by blood pressure of 140/90 or a systolic rise of 30 or a diastolic rise of 15 over the prenatal baseline, nondependent edema (swelling of the hands or face) and proteinuria (abnormal amounts of protein in the urine). BPMC expert Richard Aubry, a specialist in high-risk pregnancies, testified that patient A's hospital records showed her to be a primigravida (first pregnancy) suffering from gestational diabetes who evidenced elevated blood pressure, edema of the hands and a plus one protein content in her urine. Based upon the foregoing, Aubry testified that patient A had preeclampsia, that the objective signs present during the first 4 to 6 hours following her admission warranted a diagnosis of preeclampsia, and that petitioner's failure to diagnose this condition within that time frame constituted a deviation from acceptable medical practice.

In our view, Aubry's testimony adequately supported the finding of gross negligence with respect to patient A. The contrary medical evidence presented by petitioner merely created a credibility issue which respondents were free to and did resolve against him *(see, Matter of Edelman v Sobol, supra; Matter of Stein v Board of Regents,* 169 AD2d 857, 858, *lv denied* 77 NY2d 810, *cert denied* — US —, 112 S Ct 372). "It is well settled that 'a determination * * * may be supported by substantial evidence despite conflicting testimony as to the charges' " *(Matter of Stein v Board of Regents, supra,* at 858, quoting *Matter of Holmstrand v Board of Regents,* 71 AD2d 725, 726). Further, we reject the contention that the charge could not be sustained in the absence of a finding that patient A actually had or died from preeclampsia. The gravamen of the charge was petitioner's failure to make the appropriate diagnosis and to undertake the appropriate course of treatment based upon the objective signs present in patient A. As stated by the Hearing Committee, "a reasonably prudent physician weighing the grave risks of preeclampsia against the virtual non-existence of risk from treatment would have opted for a diagnosis and treatment of preeclampsia in this patient. [Petitioner] failed to make such a diagnosis at any time."

The finding of gross negligence with respect to patient B was based upon findings, among others, that petitioner failed to diagnose cephalopelvic disproportion (the baby's head is too large to pass through the mother's pelvis) despite clear indications; failed to properly assess the infant's fetal position and station; persisted in administering oxytocin (pitocin) to augment contractions, which was contraindicated in the face of a potentially obstructed labor; persisted in attempts at a forceps delivery; used excessive force in connection with the forceps delivery; unnecessarily caused birth trauma to the infant and failed to perform a cesarean section delivery as indicated. We conclude that the testimony of BPMC expert Charles Milano provided substantial evidence for these findings, notwithstanding the existence of contrary medical evidence. Further, we strongly disagree with petitioner's assertion that BPMC was required to prove that the excessive force employed in the forceps delivery actually caused the death of patient B's child. As correctly ruled at the administrative hearing, proximate cause and damage, essential elements of a negligence action, have no relevance in a licensure proceeding because no injury need be shown to demonstrate substandard care *(see, Matter of Morfesis v Sobol,* 172 AD2d 897, 898-899, *lv denied* 78 NY2d 856). The use of excessive force was sufficiently established by the mere fact that petitioner's traction of the forceps pulled patient B's buttocks off the delivery table on two different occasions. For that reason, we further conclude that the evidence received to rebut petitioner's proof of an alternative cause of death was, at worst, irrelevant and by no means prejudicial. Similarly, because such evidence was cumulative, the Regents Review Committee properly denied petitioner's motion for reconsideration based upon the "discovery" of photographs of the infant taken shortly after her birth.

As to charges concerning patients C, E, G, I, J, K and L, petitioner was found guilty in each case (alone or with one or more additional specifications) of performing a trial of forceps or a forceps delivery that was not medically indicated. In our view, Aubry's testimony provided substantial evidence for each of these findings of guilt. In each case, petitioner's contention that the use of forceps was indicated by the patient's condition or the existence of fetal distress is either not supported by the record or is contradicted by competent proof. We further conclude that the record supports a finding of " 'egregious' " or " 'conspicuously bad' " conduct with respect to petitioner's treatment of patients A, B, E, G and J and, thus, the findings of gross negligence with respect to

them *(see, Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322; *Matter of Spero v Board of Regents,* 158 AD2d 763, 764).

Petitioner's remaining contentions do not require extended discussion. First, the finding of guilt of negligence on more than one occasion was not based upon multiple acts of negligence with respect to a single patient. Rather, the determination was based upon a single finding of negligence with respect to each of nine patients *(see, Matter of Yong-Myun Rho v Ambach, supra).* Second, petitioner was not deprived of a fair hearing. The fact that the Hearing Committee heard evidence and made some factual findings concerning conduct which was not alleged in the statement of charges did not prejudice petitioner because those findings were not required to support the findings of negligence or gross negligence. Finally, the imposition of penalty in a proceeding pursuant to Education Law former § 6510-a is the exclusive province of the Board of Regents and the penalty imposed in this case was not "so incommensurate with the offense as to shock one's sense of fairness" *(Matter of D'Amico v Commissioner of Educ. of State of N. Y.,* 167 AD2d 769, 771). Petitioner's remaining contentions have been considered and rejected.

Mikoll, J. P., Crew III and Mahoney, JJ., concur. Adjudged that the determinations are confirmed, without costs, and petitions dismissed.