■ In the Matter of JEAN B. POULARD, Petitioner, v COMMISSIONER OF HEALTH OF THE STATE OF NEW YORK, Respondent. [608 NYS2d 726] —Crew III, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of a Committee on Professional Conduct of the State Board for Professional Conduct which, *inter alia,* suspended petitioner's license to practice medicine in New York for one year.

In January 1992, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, a surgeon, with two specifications of misconduct. Specifically, petitioner was charged with practicing with gross negligence *(see,* Education Law § 6530 [4]) and failing to maintain adequate records *(see,* Education Law § 6530 [32]). These charges, which were sup-

ported by 25 separate allegations of misconduct,* stemmed from petitioner's care and treatment of patient A, a 28-year-old retarded male.

The record discloses that patient A was admitted to Queens Hospital Center on November 20, 1987 and diagnosed as suffering from a Morgagni hernia, a condition in which part of the intestine protrudes into the chest cavity through a defect in the diaphragm. Petitioner thereafter became involved in patient A's care and, on November 25, 1987, participated in the surgery to repair patient A's hernia. During the course of the operation, however, it became apparent that the original diagnosis had been incorrect and that the tissue previously thought to be a section of bowel penetrating the diaphragm was in fact a colonic interposition, i.e., a segment of bowel which had been surgically substituted for patient A's esophagus some years earlier. (Patient A's esophagus suffered severe damage following patient A's ingestion of lye when he was 8 years old.) Attempts were then made to restore the colonic interposition, which had been severed during the course of the operation, and the surgery was concluded with the expectation that additional surgery would be required to reconnect patient A's digestive system.

Petitioner continued to treat patient A following the surgery, but patient A's behavior problems complicated his recovery. It appears that patient A repeatedly disconnected his feeding tube which, in turn, compromised his nutritional intake and caused patient A to lose a substantial amount of weight. Indeed, the record reflects that patient A lost approximately one third his body weight, dropping from a weight of 175 pounds in November 1987 to 110 pounds in February 1988. Patient A ultimately died on February 27, 1988, with the cause of death listed as pneumonia.

Following petitioner's disciplinary hearing the Hearing Committee sustained both specifications of misconduct, including all but 6 of the 25 allegations contained therein. As to the penalty, the Hearing Committee imposed a one-year suspension of petitioner's license to practice medicine, said suspension stayed indefinitely, and a fine of $10,000. Petitioner thereafter commenced this CPLR article 78 proceeding pursuant to Public Health Law § 230-c (5) to review the determination at issue.

Initially, we are of the view that the record as a whole

---

* The original statement of charges, setting forth 23 allegations of misconduct, was subsequently amended to include two additional allegations.

contains substantial evidence to support the Hearing Committee's findings that petitioner acted as patient A's attending physician during the relevant time period *(see, Matter of Rudell v Commissioner of Health of State of N. Y.,* 194 AD2d 48, 50; *cf., Matter of La Pointe v Sobol,* 185 AD2d 462, 463). Turning to the individual specifications of misconduct, it is well settled that this Court's inquiry is limited to whether the determination of guilt by a preponderance of the evidence is supported by substantial evidence in the record *(see, Matter of Loffredo v Sobol,* 195 AD2d 757, 758-759, *lv denied* 82 NY2d 658; *Matter of La Pointe v Sobol, supra,* at 463). The Hearing Committee's finding of gross negligence with respect to patient A was based upon findings, among others, that petitioner misinterpreted patient A's X ray; failed to defer patient A's surgery after being informed of certain abnormal test results; failed to recognize the colonic interposition during the course of patient A's surgery and participated in the "take down" of the interposition; and rendered deficient postoperative care, as evidenced by patient A's severe weight loss. We are of the view that the testimony offered by BPMC expert Norman Roome, a board-certified surgeon, together with other documentary evidence and, in some instances, petitioner's admissions, provided the substantial evidence necessary to support the findings made as to each of the sustained allegations *(see generally, Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322). To the extent that petitioner denied the material allegations or offered medical evidence to the contrary, this merely presented a credibility issue for the Hearing Committee to resolve *(see, Matter of Stein v Board of Regents,* 169 AD2d 857, 858, *lv denied* 77 NY2d 810, *cert denied* — US —, 112 S Ct 372).

We reach a similar conclusion with respect to petitioner's failure to maintain adequate medical records. Again, Roome's testimony and the medical records before us provide the substantial evidence necessary to sustain this specification *(see generally, Matter of Rudell v Commissioner of Health of State of N. Y., supra; cf., Matter of Mucciolo v Fernandez,* 195 AD2d 623, 624-625, *lv denied* 82 NY2d 661). Petitioner's remaining contentions have been examined and found to be lacking in merit.

Mikoll, J. P., Mercure and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v