■ In the Matter of JOHN H. PARK, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents. [634 NYS2d 896] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Education Law former § 6510-a [4]) to review a determination of respondent Commissioner of Education which, inter alia, suspended petitioner's license to practice medicine in New York for a period of five years.

In 1983, the State Board for Professional Medical Conduct (hereinafter the Board) charged petitioner, an ophthalmologist, with professional misconduct, including charges of gross negligence, gross incompetence and practicing medicine fraudulently, stemming from his treatment of five patients. A

hearing was held, after which the Hearing Committee voted to sustain a number of the charges, and recommended that petitioner's license be revoked and that he be fined. Upon review, the Regents Review Committee (hereinafter RRC) recommended, *inter alia*, that several of the specifications, including those relating to patient BBB (which are the only charges at issue in this proceeding), be remanded to the Hearing Committee for further proceedings. Particularly, the RRC directed that notes made by an investigator in connection with his interviews of Kenneth Klementowski and Donald Yung, two of the Board's expert witnesses (which notes petitioner maintains constitute *Rosario*-type material [*see, Matter of Inner Circle Rest. v New York State Liq. Auth.*, 30 NY2d 541, 543]), be made available to petitioner (or, if confidentiality was claimed, that they be provided for in camera review by the Hearing Officer), and that petitioner be afforded an opportunity to further cross-examine those experts and patient BBB.

Approximately two years after the RRC's issuance of its decision remanding the matter, the Board requested that additional hearings be scheduled. Notwithstanding earlier representations made by the attorney formerly handling the case for the Board—who, in the interim, had become disabled and unavailable to testify—that he possessed the investigator's notes, the Board's new counsel informed petitioner that "[n]o such documents ever existed". A hearing was held, outside the presence of the Hearing Committee, at which the investigator testified that he had never made the notes in question, and other Board employees testified as to what had happened to the case files during the intervening two years. The Hearing Officer, after finding that petitioner had not demonstrated that the witnesses he sought to call could contribute any relevant information, closed the hearing and found that the notes never existed.

Petitioner was unable to conduct further cross-examination of patient BBB because the Board's attorney refused to recall her to the stand, due to her advanced age and refusal to testify again. And, although petitioner initially sought to make use of the additional opportunity to cross-examine Klementowski and Yung, and a hearing was scheduled for that purpose, petitioner later elected to forego that opportunity, contending at the time that, inasmuch as the expert testimony previously presented was insufficient on its face to support the charges, further cross-examination "would be superfluous". Petitioner now asserts that he declined to cross-examine these doctors, in part, because of the Hearing Officer's refusal to order that the investigator's notes be produced.

The hearing was then closed, and the Hearing Committee—two members of which had been replaced since the Committee's previous vote—unanimously sustained the charges with respect to patient BBB, and again proposed that petitioner's license be revoked. When this matter reached the RRC, despite its holding that the testimony of patient BBB had to be disregarded in its entirety due to her inability to return for cross-examination, the RRC nevertheless sustained the specifications charging petitioner with gross negligence and gross incompetence in connection with his diagnosis of cataracts in patient BBB and his recommendation that she undergo corrective surgery therefor. These charges were found to be amply supported by the testimony of the Board's expert witnesses and that of petitioner himself, and by the pertinent medical records.

Apropos of the investigator's notes, the RRC rejected the Hearing Officer's conclusion that the notes never existed, but found that they had become unavailable. However, it went on to find that petitioner had not proven that the notes actually contained any statements made by the doctors—as opposed to the investigator's impressions or strategy, or administrative matters such as scheduling and the like—or that they related to patient BBB. This, coupled with the fact that the notes, having not been written or signed by the doctors themselves, would be entitled to less weight than those experts' own statements and testimony, and the added fact that petitioner's defense theory was not based on discrediting or disputing the validity of the doctors' averments but on the premise that their testimony, even if credited, was insufficient on its face to establish a deviation from acceptable medical conduct, led the RRC to conclude that petitioner was not prejudiced by the unavailability of the notes.

Respondent Board of Regents accepted the conclusions and recommendations of the RRC, suspended petitioner's license for five years, with the last four years stayed, and placed him on probation—one condition of which is that he obtain retraining in the indications of ophthalmological surgery—for the five-year period. Having obtained a stay of the determination pending review, petitioner seeks annulment on several grounds.

Petitioner's arguments are unavailing. He contends that he was unduly prejudiced by the administrative delay in resolving this matter, particularly the two years that transpired between the time the case was remanded by the RRC and the resumption of proceedings thereafter. It is noteworthy that

petitioner, who was able to practice throughout that period, apparently took no affirmative steps to have the proceedings resume (*cf., Matter of Reid v Axelrod*, 164 AD2d 973, 974-975). Moreover, he has not demonstrated how the substitution of the Hearing Officer, or of two members of the Hearing Committee, each of whom affirmed in writing that he had read and considered the entire record of the prior hearings, caused him harm or deprived him of a fair hearing (*see, Matter of Tong Seng Tjoa v Fernandez*, 194 AD2d 938, 941, *lv denied* 82 NY2d 659; *Matter of Matala v Board of Regents*, 183 AD2d 953, 956).* Any prejudice occasioned by petitioner's inability to again cross-examine patient BBB was cured by the striking of her testimony.

And, though the investigator's notes might not be missing if there had been no delay, we agree—for the reasons cited by the RRC in its well-considered report—with the Board of Regents' conclusion that petitioner was not prejudiced by their loss. For the same reasons, we reject petitioner's claim that the Board's failure to turn over the investigator's notes, without more, warrants either dismissal of the charges or a new hearing (the latter being a request made for the first time in this proceeding) (*cf., People v Martinez*, 71 NY2d 937, 940; *People v Haupt*, 71 NY2d 929, 931).

Nor are we persuaded by petitioner's assertion that the Board of Regents erred in sustaining the findings of misconduct with respect to his care of patient BBB. Klementowski and Yung, each of whom had examined patient BBB, both testified that she had no cataracts and that cataract surgery was not medically indicated for either her right eye—with respect to which it would be especially risky, given the existence of a macular hole in that eye—or her left eye, which Yung described as "perfectly normal". The conflicting testimony offered by petitioner's experts merely raised credibility questions, which respondents were free to resolve against petitioner (*see, Matter of Loffredo v Sobol*, 195 AD2d 757, 759, *lv denied* 82 NY2d 658). Although petitioner denied that he scheduled surgery for the left eye, he admitted having done so for the right eye, and the patient's file contained a scheduling sheet for two surgeries, a week apart, a consent form for an operation on each eye, and a notation, in petitioner's handwriting,

---

* These substitutions, in and of themselves, do not mandate a new hearing or dismissal of the charges (*see, Matter of Laverne v Sobol*, 149 AD2d 758, 761, *lv denied* 74 NY2d 610; *cf., Matter of Briggs v Board of Regents*, 188 AD2d 836, *lv denied* 81 NY2d 708).

reflecting that surgery was to be performed on *both* eyes, two weeks apart. In short, the record adequately supports the finding that petitioner scheduled surgery for both eyes, and that to do so was medically unwarranted.

Petitioner's other arguments have been considered and found meritless.

Mercure, J. P., Crew III, White and Casey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.