■ In the Matter of PETER J. CORINES et al., Petitioners, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [700 NYS2d 303] —Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which, *inter alia*, revoked petitioner Peter J. Corines' license to practice medicine in New York.

Petitioners Surgical Consultants, P. C. and Ambulatory Anesthesia & Medical Services, P. C., both professional corporations authorized to practice the profession of medicine, and petitioner Peter J. Corines, being the sole shareholder and director of each corporation, were charged by the Bureau of Professional Medical Conduct (hereinafter BPMC) with 52[1] specifications of professional misconduct based on Corines' treatment of 17 patients, billing and recordkeeping improprieties, and misleading applications for hospital privileges. In particular, petitioners were charged with 11 counts of professional misconduct by reason of practicing the profession with gross negligence; 11 counts of professional misconduct by reason of practicing the profession with gross incompetence; professional misconduct by reason of practicing the profession with negligence on more than one occasion; professional

---

1. This was reduced to 51 specifications because one count of fraudulent practice was withdrawn by BPMC during the hearing.

misconduct by reason of practicing the profession with incompetence on more than one occasion; 10 counts of professional misconduct by reason of practicing the profession of medicine fraudulently; 17 counts of professional misconduct by reason of failing to maintain a record for each patient which accurately reflected the evaluation and treatment of the patient; and one count of professional misconduct by reason of ordering excessive tests not warranted by the condition of the patient.

Following a hearing spanning 15 separate days during which the Hearing Committee of respondent heard testimony from various lay and expert witnesses, petitioners were found guilty of negligence on 13 separate occasions in the course of treating eight different patients; professional misconduct by reason of practicing the profession with incompetence on four occasions; professional misconduct by reason of practicing the profession of medicine fraudulently by seven separate acts of fraud stemming from billing practices related to seven different patients; professional misconduct by reason of practicing the profession of medicine fraudulently on two separate occasions resulting from material omissions in Corines' appointment applications to two separate facilities; and 16 counts of professional misconduct by reason of failing to maintain accurate and complete patient records relating to 16 different patients. As a result of these findings, the Hearing Committee revoked Corines' license to practice medicine, revoked the certificates of incorporation of both professional corporations and assessed a fine of $90,000 against Corines. Petitioners commenced this CPLR article 78 proceeding to seek judicial review of the determination of the Hearing Committee.[2]

Petitioners initially contend that the Hearing Committee's finding that petitioners practiced negligently on more than one occasion must be reversed since the Hearing Committee misapplied the definition of "negligence on more than one occasion". They argue that as a result of the misunderstanding of the term "occasion", the Hearing Committee improperly aggregated separate and discrete acts to conclude that petitioners failed to exercise the due care that would be exercised by a reasonably prudent physician and, in doing so, the Hearing Committee sustained the charge of practicing the profession with negli-

---

2. Petitioners do not address the 16 findings of inadequate recordkeeping in their brief and, thus, these findings are not before the Court for review.

Since petitioners do not contest the incompetency findings in their brief, these findings are also not before the Court for review (see, Gibeault v Home Ins. Co., 221 AD2d 826, 827, n 2; Matter of Adler v Bureau of Professional Med. Conduct, 211 AD2d 990).

gence "on a particular occasion". In *Matter of Yong-Myun Rho v Ambach* (74 NY2d 318), the Court of Appeals observed: "Moreover, section 6509 (2) distinguishes between professional misconduct resulting from practicing with gross negligence on a 'particular occasion' and practicing with ordinary negligence 'on more than one occasion'. The inference is compelling that by its use of the phrase 'particular occasion' in describing gross negligence, the Legislature was referring to an event of some duration occurring at a particular time or place, during which either a single act of negligence of egregious proportions or multiple acts of negligence that cumulatively amount to egregious conduct could constitute gross negligence. Use of the phrase 'on more than one occasion' suggests, with equal force, that the Legislature was referring to distinct events of some duration during which an act or acts amounting to ordinary negligence occur" (*id.*, at 322).

Here, the Hearing Committee took isolated, separate events with respect to a particular patient and concluded that the combination of those events constituted negligence. After reviewing the entirety of the determination, we are convinced that petitioners' argument in this regard is without merit. It is clear that the Hearing Committee determined that petitioners' care with respect to a particular patient was negligence and that the negligence consisted of several misdeeds. It is also clear that the Hearing Committee considered the course of treatment of a particular patient to be the "event" and concluded that petitioners were negligent on that occasion. In sustaining specification (12), the Hearing Committee merely found that petitioners had committed acts of negligence on more than one occasion and with respect to distinctive events.

Next, petitioners contend that the negligence findings are not supported by substantial evidence. This argument is premised upon the lack of expert testimony in support of the findings of fact made by the Hearing Committee. "Where there is a relationship between inadequate record-keeping and patient treatment, the failure to keep accurate records may constitute negligence" (*Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 89, *appeal dismissed and lv denied* 83 NY2d 901). Here, petitioners argue that no expert testimony was offered to establish the required nexus between the alleged recordkeeping deficiencies and patient care. We disagree.

There is evidence in the record offered by expert witnesses that petitioners' deficiencies in recordkeeping did affect patient care. Although there may have been conflicting expert testi-

mony on this issue, it is the exclusive province of the Hearing Committee to determine issues of credibility (*see, Matter of Tames v DeBuono*, 257 AD2d 784, 786; *Matter of Morrison v DeBuono*, 255 AD2d 710, 711). The Hearing Committee determined to credit BPMC's expert witnesses over those of petitioners and, in this regard, such findings are given deference. Accordingly, we determine that substantial evidence supports the determination that the failure of petitioners to perform and/or document required medical histories and physical examinations resulted in poor, inadequate and dangerous patient care. Further, there is substantial evidence in the record to sustain those findings of petitioners' negligence apart from the deficient recordkeeping. The testimony which the Hearing Committee chose to credit adequately supports the findings that petitioners' care was less than that exercised by a reasonably prudent physician under the circumstances.

Also unavailing is petitioners' argument that they suffered prejudice as a result of the delay in bringing these charges. There is no Statute of Limitations governing the initiation of this type of disciplinary proceeding (*see, Matter of Galin v DeBuono*, 259 AD2d 788, 789-790, *lv denied* 93 NY2d 812). Absent proof of actual prejudice, mere delay will not be accepted as the basis for annulling a hearing determination (*see, Matter of Lawrence v DeBuono*, 251 AD2d 700, 701; *Matter of Matala v Board of Regents*, 183 AD2d 953, 956). In this regard, petitioners claim actual prejudice as a result of the death of the chief of surgery at Flushing Hospital, who petitioners claim was made aware of Corines' prior suspension at Catholic Medical Center. Even if the testimony of this witness would confirm petitioners' allegations in this regard, it does not excuse Corines' less than truthful responses to the questions on the application for hospital credentials. With respect to the balance of petitioners' claims of prejudice, we find them to be without merit. Petitioners have simply not established any actual prejudice stemming directly from the delay in the institution of these proceedings.

Petitioners next contend that the fraud findings are not supported by substantial evidence. Seven of the fraud findings are related to false time periods listed on anesthesia bills submitted to insurance companies. Petitioners attempted to excuse these inaccuracies by blaming inadequacies in their computer software program and their billing staff. The Hearing Committee rejected this explanation as being "completely ridiculous and absurd", noting that petitioners are ultimately responsible for the actions of their staff. Under these circumstances, where

the explanation for fraudulent misrepresentations is found to be incredible, an inference of an intent to deceive may properly be drawn (*see, Matter of Post v State of N. Y. Dept. of Health*, 245 AD2d 985, 987; *Matter of Radnay v Sobol*, 175 AD2d 432, 433). The remaining fraud findings were based upon misleading applications for hospital privileges. Corines failed to answer, answered falsely or failed to provide required explanations to questions regarding other hospital affiliations on four applications. These acts permit an inference of intent to mislead, which is a factual determination for the Hearing Committee to make (*see, Matter of Sung Ho Kim v Board of Regents*, 172 AD2d 880, 881-882, *lv denied* 78 NY2d 856; *see also, Matter of Abdelmessih v Board of Regents*, 205 AD2d 983, 986). Clearly, these fraud findings are supported by substantial evidence and petitioners' complaints in this regard are without merit.

Lastly, petitioners contend that the penalty of Corines' license revocation and the maximum allowable fine was too severe. Based upon our review of the record as a whole, we cannot say that the penalty imposed is so disproportionate to the violation sustained as to shock one's sense of fairness (*see, Matter of Capote v DeBuono*, 241 AD2d 570, 571). Where the physician abuses the privilege afforded by his medical license for personal gain and in opposition to the best interests of the people of this State, the penalty of revocation of that license is appropriate (*see, Matter of Adler v Bureau of Professional Med. Conduct*, 211 AD2d 990, 993). Although the failings of petitioners as documented in this record did not result in injury to any patient, there is no legal requirement that injury be established before disciplinary sanctions can be imposed (*see, Matter of Abdelmessih v Board of Regents*, 205 AD2d 983, 985, *supra*; *Matter of Morfesis v Sobol*, 172 AD2d 897, 898, *lv denied* 78 NY2d 856). Given the totality of the offenses sustained against petitioners, the penalty imposed is neither unduly harsh nor excessive.

We have considered the balance of the contentions made by petitioners and find them to be without merit. Accordingly, we find that the underlying determination is supported by substantial evidence and must be confirmed.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.